Henry Allen **THOMPSON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 626.

Supreme Court of Alaska.

March 31, 1966.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

PER CURIAM.

Appellant's court appointed appeal counsel has advised the court that after detailed investigation and research he has been unable to find any meritorious ground for appeal and asks for further instructions.

Appellant was indicted for forgery, burglary and grand larceny. Adele Majors was indicted jointly with appellant on the forgery count and separately for receiving stolen property. At their arraignment William Moran, Esq. was appointed by the court to represent both defendants.

After pleas of not guilty had been entered by both defendants as to all counts, their counsel moved that the cases be separated and that other counsel be appointed for appellant. The motion was granted and Lester Miller, Esq. was appointed to represent appellant. For some reason not explained in the record Robert Libbey, Esq. was then substituted as counsel for appellant in the place of Mr. Miller.

After the trial jury had been selected appellant's counsel moved to suppress certain evidence. After argument decision on the motion was reserved. On the following morning counsel withdrew his motion for suppression. The court at the same time granted a previous motion of appellant for sequestration of certain witnesses to prevent discussion of the case during trial. At the close of the state's case in the third day of trial the court granted counsel for appellant's motion for a judgment of acquittal as to Count IV charging grand larceny. In the afternoon of the third day of trial, after appellant had taken the stand

and had been examined and cross-examined at length, appellant advised the court that he desired to withdraw his plea of not guilty to Count I and enter a plea of guilty. Thereupon, upon the recommendation of the court and on the motion of the District Attorney, Counts III and IV of the indictment were dismissed. Only Adele Majors was named in Count II. The jury was discharged and a presentence investigation ordered.

The trial transcript reports the following proceedings with relation to the above:

THE COURT: I'll give you fifteen minutes, and then we will resume with the jury in the box in fifteen minutes. I would like to see counsel very briefly in chambers.

THE CLERK: This Court stands in recess until 2:30.

(Whereupon at 2:15 p. m. Court recessed. At 2:30 p. m. Court resumed its session and the following proceedings were had:)

THE CLERK: This Court now resumes its session.

THE COURT: Mr. Thompson, have you had an opportunity to discuss the present posture or the present position of the case with your counsel, Mr. Libbey?

MR. THOMPSON: I have, sir.

THE COURT: Mr. Libbey has indicated to me that you desire to withdraw a plea of not guilty to Count I and enter a plea of guilty at this time, is this correct?

MR. THOMPSON: Yes, that's right.

THE COURT: You realize that by so doing that I may impose any sentence authorized by law, regardless of any recommendations made here by the District Attorney, the Youth and Adult Authority as a—in a presentence investigation, your own attorney or yourself?

MR. THOMPSON: Yes.

THE COURT: Do you have any question about the—this matter?

MR. THOMPSON: No, sir, I don't.

THE COURT: Very well, the—is it your desire to withdraw your plea of not guilty to Count I?

MR. THOMPSON: That's correct, sir.

THE COURT: The plea of not guilty to Count I may be withdrawn. How do you now plead to Count I, charging you with uttering a forged instrument with intent to defraud?

MR. THOMPSON: Guilty, sir.

THE COURT: Enter a plea of guilty. I would recommend to the State that the remaining counts be dismissed as against this defendant.

MR. MC GRATH: I so move, Your Honor.

THE COURT: All right. Counts III and IV will be dismissed as to this defendant. The defendant remain present during such time as I dismiss the jury. There is nothing further to go to the jury on, and the jury will be dismissed.

MR. LIBBEY: Thank you, Your Honor.

When appellant appeared in court for sentencing the following proceedings were had after his counsel made a plea for probation:

THE COURT: Well, Henry Allen Thompson, you will rise.

(Whereupon Defendant Thompson complied with the request of the Court and the following proceedings were had:) Is there anything that you wish to say before I pass sentence upon you as to why sentence should not be imposed or in mitigation?

MR. THOMPSON: Yes, sir, there is, Your Honor. I would just like to emphasize on the fact that Mr. Libbey has spoken on. If I was to receive a chance here to be placed on probation, that I could meet the requirements of this probation, and I'm sure the Court would have no further trouble out of me. I realize my wrong that I have done,

sir. I think that just the fact that I was fighting a loosing [sic] battle when Adele and I first arrived here and there seemed to be no other out. However, sir, since I have been in jail for four months, I realize my wrongs I've said. I'm willing to straighten myself up. As Mr. Libbey has said, I'm pretty sure I can get employment here. My employer has said that he would put me back to work, and I've spoken to Rev. Batcher [phonetic] and he's also said that he would help me find employment, sir. If you would take this under consideration to offer me a chance, Your Honor, I'm sure the Court would be very pleased.

THE COURT: I don't think probation is indicated here. I feel strongly the other way, as a matter of fact, at this moment. I have examined into the previous record which you've accumulated. I think you are going to have to assume responsibility for your conduct and if you fail to follow those standards, or those laws that are—observe those laws that are established in the area in which you must live and which you must comply with, that there isn't very much future for you.

MR. THOMPSON: I understand, sir.

THE COURT: I find you guilty in accordance with your plea. The penalty provided by law is not less than one and not more than twenty years. I am going to place this sentence in execution. You are now remanded into the custody of the State Police who shall take you to a place of confinement. Now, Mr. Libbey, if you feel that circumstances warrant it, that I consider this matter further within the—such a time that I have retained jurisdiction, that is, within the next sixty days; you may bring this matter to my attention and make an application for modification of the sentence. I will be glad to review it at that time.

MR. LIBBEY: Thank you, Your Honor.

MR. THOMPSON: Thank you, Your Honor.

THE COURT: The judgment will be prepared in usual form. Is there anything further?

MR. FLINT: No, Your Honor.

THE COURT: Anything further, Mr. Libbey?

MR. LIBBEY: Nothing further at this time, Your Honor.

On May 25, 1965 appellant wrote to Superior Court Judge Fitzgerald who was handling his case, accusing his first court appointed counsel of a lack of interest in his case because of the small fee involved and of attempting by trickery to induce him to plead guilty by stating that unless he did so his co-defendant would turn state's evidence against him; that his alternate court appointed counsel threatened to withdraw from the case during trial unless he (Thompson) agreed to plead guilty to the count of forgery in consideration of which the district attorney would drop the charges of burglary and larceny and that because of his counsel's insistence, assurance or guarantee that he would receive probation he pleaded guilty to a charge of which he was innocent. The letter further charged that the probation officer advised appellant that he disbelieved his story and during their interviews pressured him into admitting guilt of the charges of burglary and larceny by giving the impression that by so admitting his guilt, his chances of probation would be increased. At or about the time appellant was composing the foregoing letter accusing his court appointed counsel of duplicity, counsel was attempting to find employment for appellant in order to improve his chance of obtaining a suspension of sentence.

On June 4, 1965 the court heard appellant's motion for suspension of sentence and the following proceedings were had:

MR. LIBBEY: Thank you, Your Honor. This is a hearing on a motion for the suspension of a sentence which

was imposed in this case on April 7, 1965, and we are within the jurisdictional time limitations placed upon the Court by statute, to modify this sentence. The reason that I'm here—the reasons are pretty substantially set forth in the affidavits I filed; the reason being, I feel, that the defendant's situation has changed. His situation regarding his—his—his—the advisibility of parolling him on probation has changed substantially, in that he now has a job to go to. A job that would afford him the opportunity to earn his living here in town where he could be in constant contact with the probation officer, and make any sort of restitution which the Court might impose upon him, and could make a transition to public life in a fairly normal way by having a job to go directly to.

\* \* \* \* \* \*

THE COURT: Very well, the petitioner may stand. Mr. Thompson is there anything that you wish to say at this time?

MR. THOMPSON: Yes, sir, there is, Your Honor. I wish to re-emphasize on Mr. Libbey's point. I do have employment to go directly to, and I think that I could better my conditions if the Court would see fit to offer me this opportunity. I have thought this thing over considerably, since the time of my arrest, which, as Mr. Libbey said, is six months ago. I have come to the conclusion that I can and I will do my best in the Anchorage community here if the Court will see fit to offer me this opportunity. Thank you.

THE COURT: All right. You may remain standing. I'm going to review just a few things that have happened in this matter. At the time that I imposed sentence, I intended to review it and ask Mr. Libbey to call it to my attention during the period within which I would retain jurisdiction to modify the sentence. Mr. Libbey did this and he called me several times on the tele-phone, went to some trouble, I assume, to obtain a possible employer, and found that—that the employer could not interview you because you were in solitary confinement and asked my assistance, in this connection. So I made an inquiry of the director of the jail system, Mr. Severson, and found you'd gotten into some difficulty and had been placed in solitary confinement, and that the head jailer had talked to you, and that, as a result you had been restored—taken out of solitary confinement and subsequently when you were given an order that you acted in an insolent manner and were placed back into solitary; and I reported this very generally to Mr. Libbey, and informally denied your application.

Thereafter I had a letter from Miss Majors, who I see here in Court. I had a letter from your father. I had an inquiry from a church minister, and the church minister advised that he'd been informed of charges of racial prejudice levied against the institution; and I referred this matter back to Mr. Severson. I have had several letters which I have carefully considered. The last one was dated May 25th, of 1965. I'm going to answer your letter now. I haven't written, but I—and I wanted you here today because I wanted to comment on this letter.

First of all in this letter you charge Mr. Miller and Mr. Libbey with treachery, which is in no wise true. Mr. Libbey undertook to prepare for you a defense, and you were called as a witness as under the nature of the charge and circumstances of the case, I don't think he had very little alternative. During your testimony it appeared that—by your own admissions, that you were at least guilty of preparing the forged instrument, which was later uttered by Miss. Majors, and after that stage of your testimony, Mr. Libbey had no alternative but to consider obtaining the most lenient treatment that he could in your behalf, and I think he did. And

at all times— I want to deny now, in my considered opinion, Mr. Libbey afforded you anything else but a competent and a conscientious defense, and at all times he has worked on your behalf, and there— and I can bear witness to this because I've talked to Mr. Libbey numerous times on the telephone about your situation. So the charges of treachery levied against Mr. Libbey are wholly incorrect.

Now you charged the probation officer with having, in effect, participated in a conspiracy to railroad you, and that he had mislead [sic] you, and caused you to make admissions which have lead [sic] to the sentence which you now received. I know Mr. Palmier from many contacts and many appearances before this Court, and at no time, in any one of these appearances do I think that this man has acted other than honestly and candidly, and I, personally, don't believe these charges that have been levied against Mr. Palmier.

Finally, the first time I have ever heard allegations of racial prejudice levied against the penal institution is in connection with your case. No time previously has such allegations been made. Now, as I say, I have given some thought to this, and I'm not going to modify your sentence, and I want you to clearly know why I am not modifying this sentence. The reason is, if these letters had not been written in which you disavow liability for your own conduct and place the blame on others, I might consider it. Now I don't want to be interrupted.

MR. THOMPSON: But, I—

THE COURT: And when you come before me, or write me and levy charges of treachery on the part of your attorneys and on the part of the probation officer, and others, I feel that probation is not in anyway indicated. I feel that first of all you failed to accept the responsibility for the—your conduct which was established under oath, through your own words; and that your having failed to accept responsibility, and in accusing

all others who have had some contact with this case for your predicament, consideration of the modification really isn't further indicated. The application is denied. You will be removed here, and I will not again consider this application, nor will I answer your letter of May 25th, because I have fully commented on it. That letter will be placed in the file and it will be sealed. The defendant is now to be removed and returned to custody until he has served a minimum probation.

Notice of appeal was filed by appellant and application made for the appointment of counsel to prosecute the appeal in forma pauperis.

Appellant's application was treated as an application to vacate sentence under Criminal Rule 35(b) and denied with the entry of the following order:

## ORDER

The defendant, Henry Allen Thompson, filed in Superior Court a notice of appeal in the above entitled case and designated the entire record as points of appeal and grounds. Along with his notice of appeal, he, by letter, made application to proceed in forma pauperis and for the appointment of an attorney to prosecute his appeal.

Judgment was entered on April 7, 1965 imposing a sentence of one to 20 years for the crime of Forgery as charged in Count I of the indictment. The defendant, Henry Allen Thompson, was brought to trial on March 15, 1965. A jury was impaneled and evidence was taken. On March 17, 1965 the defendant undertook to testify in his own behalf, and at the conclusion of his testimony, the defendant's counsel rested the case. Thereafter the defendant in the absence of the jury entered his plea of guilty to Count I of the indictment. Counts III and IV of the indictment were then dismissed and on April 7, 1965 sentence was imposed upon the defendant. From the defendant's own testimony, under oath, at the time of trial it was clear that the defendant admitted making the forged instrument and accompanying one Adele Majors, also convicted, to Caribou's Department Store

for the purpose of cashing said forged instrument.

Defendant now seeks to appeal in forma pauperis, and I find that appeal is not appropriate. His application to proceed in forma pauperis is denied. Treating his notice of appeal as a petition to vacate sentence under Rule 35(b), I find that said petition should be and is hereby dismissed.

MADE and ENTERED at Anchorage, Alaska, this 14th day of June, 1965.

/s/ James M. Fitzgerald
JAMES M. FITZGERALD
Superior Court Judge

On June 18, 1965, in response to appellant's application for a writ of habeas corpus, the following order was entered:

## ORDER

Petitioner has made an application for a Writ of Habeas Corpus requesting a copy of the United States Constitution, Alaska State Constitution and the Alaska Statutes. Treating the petition as an application for a Writ of Habeas Corpus, said application is denied. Treating the application as a request for the use of law books,

IT IS HEREBY ORDERED,

That said petitioner is furnished the Court's copies of the Alaska Rules of Court Procedure and Administration; Title 9 to 16, Alaska Statutes; and Title 1 to 8, Alaska Statutes, for a period of TWENTY-ONE (21) Days, subject to an application for an additional period.

The Clerk of the Court is directed to send petitioner a certified copy of this Order, together with the authorized books.

MADE and ENTERED at Anchorage, Alaska, this 18th day of June, 1965.

/s/ James M. Fitzgerald

On June 29, 1965 this court granted appellant's application to appeal in forma pauperis and appointed Seaborn J. Buckalew, Jr., as his counsel.

Appellant's only point on appeal was that his plea of guilty was an improvident and involuntary act.

On November 26, 1965 this court received the following letter from appellant's court appointed counsel:

I have encountered some critical problems in my efforts to prepare a brief in the above appellate matter. I will outline them in detail so that the matter may be referred to the Chief Justice for determination.

I was appointed to represent the appellant by an order filed and entered on June 29, 1965. The preparation of the record on appeal was completed on October 13, 1965. I read the entire record, which is 431 pages in length, and was unable to ascertain any prejudicial error upon which to base the appeal.

After a lengthy exchange of correspondence with the appellant, with frequent delays in his replying to my letters, the entire matter resolved itself into the allegations in the enclosed Affidavit. You will note that the appellant contends that his plea of guilty was involuntary and a nullity because:

1. His court appointed counsel, Mr. Robert Libbey, threatened to withdraw if he would not plead guilty.

2. Mr. Libbey assured him that if he would plead guilty, he would receive probation.

Since executing the Affidavit, the appellant has written me as follows: 'I have read over the Affidavit many times now, and I find it in order, however, I do wish to say at this point that I do not recall Mr. Libbey mentioning the guarantee (of probation) to be offered through the District Attorney's office but rather on his own personal knowledge because he knew who the interviewing probation officer would be and he would that very evening go and make the necessary arrangements with him.'

In an effort to ascertain what facts, not shown in the record, were available to the appellant to support his position that the plea was involuntary, I had a lengthy interview with the trial Judge and sev-

eral discussions with Mr. Libbey. Nothing of a helpful nature resulted. As a matter of fact Mr. Libbey categorically denies the truth of the Affidavit in its entirety.

This left me with an extremely narrow question to brief. That is whether bad advice or misrepresentations by defendant's counsel and relied upon by the defendant in entering a plea of guilty are sufficient to defeat the plea as an involuntary one. In the instant case the appellant is not claiming that the advice or misrepresentations were even passively acquiesced in by the court or any responsible officer of the state. In this respect I would particularly call attention to page 411 of the transcript where prior to accepting the plea of guilty Judge Fitzgerald said, 'You realize that by so doing I may impose any sentence authorized by law regardless of any recommendations made here by the District Attorney, by the Youth and Adult Authority as they—in presentence investigation, your own attorney and yourself?'

After a thorough search of the precedents, I have been unable to find even a minority view which would support appellant's contentions on appeal. On the contrary I found a great many cases based upon more favorable facts, to the appellant, than exist in this case in which convictions based upon pleas were affirmed.

I will list the leading cases:

Cal.—Application of Atchley, 310 P.2d 15, 48 C.2d 408, certiorari denied Atcheley v. People of State of California, 78 S.Ct. 273, 355 U.S. 899, 2 L.Ed.2d 195 —People v. Gilbert, 154 P.2d 657, 25 C.2d 422.

People v. Horton, 345 P.2d 45, 174 C.A. 2d 740—People v. Rose, 339 P.2d 954, 171 C.A.2d 171—People v. Croft, 286 P.2d 479, 134 C.A.2d 800—People v. Martinez, 199 P.2d 375, 88 C.A.2d 767, certiorari denied 69 S.Ct. 1041, 337 U.S. 909, 93 L.Ed. 1721.

Tex.—Ex parte Williams, 303 S.W.2d 403, 165 Tex.Cr. 130.

Cal.—People v. Smith, 261 P.2d 306, 120 C.A.2d 531.

Cal.—People v. Hall, 224 P.2d 812, 100 C.A.2d 763.

Cal.—Ex Parte Dye, 166 P.2d 388, 73 C.A.2d 352.

Cal.—People v. Caruso, 345 P.2d 282, 174 C.A.2d 624, certiorari denied Caruso v. California, 80 S.Ct. 1259, 363 U.S. 819, 4 L.Ed.2d 1517.

Because of this situation any brief that I might file would be completely without precedent or authorities cited. It would be purely argumentative.

Under the circumstances I must conclude that I will be unable to offer any serious argument in behalf of the appellant and have myself concluded that the appeal is without merit.

I would appreciate your discussing this matter with Chief Justice Nesbitt. I will await his instructions.

Very truly yours,

/s/ S. J. Buckalew, Jr.

S. J. Buckalew, Jr.

Appellant's point on appeal as expressed to his counsel on appeal, was that his plea of guilty was involuntary and a nullity because coerced by his trial counsel, who threatened to withdraw unless he pleaded guilty and additionally that his trial counsel had assured him or guaranteed that if he would plead guilty, he would receive probation.

However, subsequent to execution of his affidavit making the above claims, appellant advised his counsel for appeal in writing that as a matter of fact he did not recall his trial counsel guaranteeing that probation would be offered through the District Attorney's office, but only that he knew who the interviewing probation officer would be and could guarantee that probation would be recommended and would go that evening and make the necessary arrangements.

In view of the above admission all that remained of appellant's original point on appeal was that his trial counsel had personally guaranteed that the probation officer would recommend probation and that trial counsel had threatened to withdraw from the case unless appellant would consent to enter a plea of guilty to the forgery charge in consideration of the district attorney's offer to dismiss the burglary and larceny counts.

It was after nearly three days of trial that appellant withdrew his plea of not guilty to the forgery count and entered a plea of guilty. Twelve witnesses for the state had been heard and appellant had taken the stand and testified in his own behalf. Adele Majors, appellant's co-defendant on the forgery count, had testified for the state that appellant had left their apartment one evening and upon his return had delivered to her a check which the state claimed had been stolen and that she had gone to Caribou's department store with appellant where she signed and cashed it. Appellant's testimony was that certain blank checks and typing equipment had been left with him by another person; that he, while drinking, typed a name on one of the checks and that Adele Majors signed and cashed it at Caribou's store while appellant waited in the store.

A review of the record, particularly the transcript of testimony, leads us to believe that under the circumstances it may perhaps have been advisable for appellant's counsel to recommend that appellant change his plea to guilty in the hope of obtaining greater consideration than he would have been able to obtain had the case been submitted to the jury and a verdict of guilty returned.

We also note that during investigation of the merits of the appeal by appellant's appeal counsel, appellant's trial counsel categorically denied that he had guaranteed probation or threatened to withdraw unless appellant changed his plea on the forgery charge.

At the hearing on modification of sentence held in the trial court on June 4, 1965 the trial judge had before him appellant's letter of May 25, 1965 containing the charges against trial counsel and the probation officer and obviously had considered, and to some extent had investigated, the allegations. The judge stated unequivocally that from his knowledge of the facts of the case the charges were totally unfounded. Appellant was invited to and did make an unsworn statement to the court. This statement consisted of a plea that he be permitted his freedom to accept employment obtained for him by his trial counsel. No mention was made of the charges upon which the judge had just commented.

In spite of the foregoing we find it necessary to remand the case to the trial court for further proceedings. The reason is that appellant's only point on appeal presents an issue of fact which cannot be resolved in an appeal and which should have been determined in an acceptable manner by the trial court.

Appellant claims that he was coerced into withdrawing his plea of not guilty and entering a plea of guilty by his court appointed counsel, who threatened to withdraw if this was not done, at the same time assuring him that if he did so he (counsel) would guarantee that the probation officer would recommend probation.

These and additional charges were made by appellant in his letter of May 25, 1965 to the judge. This letter was in the judge's possession at the June 4, 1965 hearing, which treated appellant's application for suspension of sentence as an application to vacate sentence under Criminal Rule 35(b). The judge commented extensively on the charges and generally found them to be without substance.

We are now able to perceive in hindsight that what should have been done at the hearing was to place appellant, his counsel and the probation officer under oath and conduct a full fact hearing on the record on appellant's charges, giving full opportunity for cross-examination. The trial

court should then have weighed the testimony and filed written findings of fact and a decision.

The facts in this case bear some similarity to those considered by the United States Supreme Court in Sanders v. United States [1] where, in spite of the intimate knowledge of the trial judge of all proceedings being later questioned, it was held that the judge should have conducted a full fact hearing.

Here the charges made by appellant against his court appointed counsel and the probation officer were in support of a request for modification of sentence so that he could obtain his freedom on probation. The court found that the charges were unsubstantiated based upon its own knowledge, investigation, and conversations had with persons directly involved, none of which was contained in the record.

Our accumulating experience in dealing with these situations according to the requirements of recent United States Supreme Court decisions emphasizes the desirability of making findings of fact on possible constitutional questions at the trial court level at the earliest appropriate occasion. In this respect the court stated in Sanders v. United States at 373 U.S. 22, 83 S.Ct. 1081, 10 L.Ed.2d 165:

> Finally, we remark that the imaginative handling of a prisoner's first motion would in general do much to anticipate and avoid the problem of a hearing on a second or successive motion. The judge is not required to limit his decision on the first motion to the grounds narrowly alleged, or to deny the motion out of hand because the allegations are vague, conclusional, or inartistically expressed. He is free to adopt any appropriate means

for inquiry into the legality of the prisoner's detention in order to ascertain all possible grounds upon which the prisoner might claim to be entitled to relief. Certainly such an inquiry should be made if the judge grants a hearing on the first motion and allows the prisoner to be present. The disposition of all grounds for relief ascertained in this way may then be spread on the files and records of the case. Of course, to the extent the files and records 'conclusively show' that the prisoner is entitled to no relief on any such grounds, no hearing on a second or successive motion, to the extent of such grounds, would be necessary.[2]

Upon remand it shall become the duty of the trial court to resolve the issue of fact presented by appellant's charges against his court appointed counsel and the probation officer and to file written findings and decision.

In determining whether the presence of the appellant is required at fact hearings growing out of post conviction petitions, the remarks of the United States Supreme Court in Sanders v. United States should be considered: [3]

> On remand, a hearing will be required. This is not to say, however, that it will automatically become necessary to produce petitioner at the hearing to enable him to testify. Not every colorable allegation entitles a federal prisoner to a trip to the sentencing court. * * * This does not mean that a prisoner can be prevented from testifying in support of a substantial claim where his testimony would be material. However, we think it clear that the sentencing court has discretion to ascertain whether the claim is

---

1. 373 U.S. 1, 20, 83 S.Ct. 1068, 10 L.Ed.2d 148, 164 (1963).

2. Although the court was discussing hearings held pursuant to 28 U.S.C. § 2255, the same principle and approach has been recommended to all state courts concerned with post conviction petitions by Mr.

Justice Brennan in his "Statement on Post Conviction Remedies" made to the Advisory Council of Judges of the National Council on Crime and Delinquency.

3. 373 U.S. at 20, 21, 83 S.Ct. at 1080, 10 L.Ed.2d at 164.

substantial before granting a full evidentiary hearing.[4]

At the fact hearing to be held in this case it is suggested to the trial court that the proceeding be expanded sufficiently to create a record upon which specific findings can be made upon as many of the following matters as may be applicable, in addition to any others that may be raised by appellant: (1) Did the court have jurisdiction; (2) Was the plea of guilty voluntarily made; (3) Was petitioner adequately represented by competent counsel at time of plea or at his trial; (4) If petitioner was not represented by counsel at time of plea, did he intelligently waive counsel after full explanation by the court as to his right to have counsel appointed and the importance of counsel to him; (5) Was there any suppression of evidence or knowing use of perjured testimony by the prosecuting attorney; (6) Were any confessions used which were not voluntarily made or illegally obtained; (7) Was petitioner mentally competent, able to understand the nature of the proceedings and to cooperate with counsel at all stages of the proceedings; and (8) Was the sentence within the statutory range.

The case is remanded to the trial court for further proceedings in accordance with the requirements of this opinion. The findings of fact and decision of the trial court shall be forwarded to the Clerk of this court when filed. Appeal counsel heretofore appointed is relieved of further responsibility and shall be compensated in the sum of $250.00 for services rendered. The appeal heretofore filed shall remain in force until further order.

4. The State of Alaska maintains a large percentage of its prisoners in institutions located in other states. The office of the Commissioner of Public Safety of Alaska estimates that the cost of transporting a state prisoner from Leavenworth, Kansas to Anchorage, Alaska for a two day hearing and return to prison is $1,373.00 and from McNeil Island, Washington, $712.00.