Richard Lee NICHOLS, Appellant,

v.

STATE of Alaska, Appellee.

No. 713.

Supreme Court of Alaska.

March 13, 1967.

22. Compare Groseth v. Ness, Opinion No. 370, 421 P.2d 624, 629–630 (Alaska 1966).

**248**

Murphy L. Clark, of Hughes, Thorsness & Lowe, Anchorage, for appellant.

Warren C. Colver, Atty. Gen., Juneau, Thomas E. Curran, Jr., Dist. Atty., and William H. Fuld, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant waived his right to indictment by a grand jury, entered a plea of guilty to an information charging him with embezzlement, and was sentenced to imprisonment for a term of from one to ten years. Nearly a year later appellant moved the sentencing court to vacate or set aside the sentence on the ground that his plea of guilty had been coerced by threats and promises of a state probation officer. After a hearing, the court below denied the motion, and appellant brought this appeal.

Appellant previously had been convicted of another crime and released on parole. The parole had been revoked and defendant was in jail at the time he entered his plea to the crime of embezzlement in this case. In his motion to vacate or set aside sentence, appellant alleged that a state parole and probation officer had coerced him into entering a guilty plea by telling appellant that if he would plead guilty to the charge of embezzlement, his original parole would be reinstated and he would be placed on probation with respect to the embezzlement conviction.

At the hearing of appellant's motion to vacate sentence, those present were the appellant, the district attorney, and Mr. Renfrew, an attorney, who had represented appellant at the time he entered his plea of guilty to the embezzlement charge and was sentenced. Mr. Renfrew appeared at the request of the court in order that the court could determine whether there was any merit in appellant's motion which would necessitate counsel being appointed to represent him. Mr. Renfrew made it clear that he was not representing appellant at this hearing.

In response to questioning by the court, Mr. Renfrew stated that there was no question in his mind but that appellant knew what he was doing when he entered his plea of guilty, and that based upon the record and his own recollection, he could see no merit to appellant's motion to vacate sentence. However, Mr. Renfrew also stated that at the time the plea of guilty was entered, he was under the impression that the probation officer had promised him, Mr. Renfrew, that he was going to reinstate appellant's parole.

Following this exchange between the court and Mr. Renfrew, appellant was placed under oath and interrogated by the court. He testified that the probation officer told him that his parole would be reinstated if he had the power to do so if appellant would plead guilty, and that if he did not plead guilty he, the probation officer, "would see that my parole was revoked completely and that I would be charged * * * as a habitual criminal." Appellant stated that he was not in fact guilty of the crime of embezzlement, and that when he said that he was guilty at the time of his plea, he was lying to get back on parole because of the probation officer's alleged promise. Appellant was then cross-examined briefly by the district attorney, and at the conclusion of the cross-examination the court found that appellant was not truthful and denied the motion to vacate.

In the case of Thompson v. State,[1] the appellant claimed that he was coerced into withdrawing his plea of not guilty and entering a guilty plea by his court appointed counsel, who had threatened to withdraw if this was not done, at the same time assuring appellant that if he did so he (counsel) would guarantee that the probation officer would recommend probation. We remanded that case to the trial court for further proceedings because the appellant's only point on appeal presented an issue of fact which could not be resolved on appeal and which should have been determined in an acceptable manner by the trial court. We said in *Thompson*:

> We are now able to perceive in hindsight that what should have been done at the hearing was to place appellant, his counsel and the probation officer under oath and conduct a full fact hearing on the record on appellant's charges, giving full opportunity for cross-examination. The trial court should then have weighed the testimony and filed written findings of fact and a decision.

> \*     \*     \*     \*     \*     \*

> Upon remand it shall become the duty of the trial court to resolve the issue of fact presented by appellant's charges against his court appointed counsel and the probation officer and to file written findings and decision.

> \*     \*     \*     \*     \*     \*

> At the fact hearing to be held in this case it is suggested to the trial court that the proceeding be expanded sufficiently to create a record upon which specific findings can be made upon as many of the following matters as may be applicable, in addition to any others that may be raised by appellant:

(1) Did the court have jurisdiction; (2) Was the plea of guilty voluntarily made; (3) Was petitioner adequately represented by competent counsel at time of plea or at his trial; (4) If petitioner was not represented by counsel at time of plea, did he intelligently waive counsel after full explanation by the court as to his right to have counsel appointed and the importance of counsel to him; (5) Was there any suppression of evidence or knowing use of perjured testimony by the prosecuting attorney; (6) Were any confessions used which were not voluntarily made or illegally obtained; (7) Was petitioner mentally competent, able to understand the nature of the proceedings and to cooperate with counsel at all stages of the proceedings; and (8) Was the sentence within the statutory range.[2]

▉ We apply *Thompson* to this case.[3] In the light of appellant's sworn testimony that he was coerced into pleading guilty by representations of the probation officer, and Mr. Renfrew's statement that he had been promised by the probation officer that appellant's parole would be reinstated, we believe it was incumbent upon the court below to have placed the probation officer under oath, in addition to appellant and Mr. Renfrew, and to have conducted a full fact hearing on appellant's charges, giving full opportunity for cross-examination. Following this, the court should have weighed the testimony and filed written findings of fact and a decision. Because this was not done, the case must be remanded for further proceedings.

The final question to decide on this appeal is whether appellant, who is indigent,[4]

---

1. Opinion No. 334, 412 P.2d 628 (Alaska 1966).

2. Id. at 635–637.

3. We recognize that our decision in *Thompson* had not been published, and therefore was not available for the direction of the court below, at the time

of the hearing on appellant's motion to vacate sentence.

4. Annexed to his motion to vacate sentence was the following statement by appellant:
    I Richard L. Nichols do hereby state that I am a poor person, wholly without funds to support filing fees or re-

is entitled to have counsel appointed to represent him on the rehearing to be conducted by the court below on remand. Counsel was not appointed to represent appellant at the first hearing, the court apparently feeling that there should be no such appointment because of lack of merit in appellant's motion.

If appellant were not indigent and had been able to employ his own counsel to represent him, there is no doubt that at the hearing below he would have been entitled to have counsel represent him. For the court to have arbitrarily refused to hear appellant through his retained counsel would have constituted the denial of a hearing and, therefore, of due process of law in the constitutional sense.[5] The question we have here is whether appellant, being financially unable to employ counsel, has any constitutional right to have counsel appointed to represent him at a hearing of a motion to vacate and set aside sentence.

The United States Supreme Court in recent years has gone far in establishing and protecting the constitutional rights of indigent defendants in criminal actions. In Griffin v. People of State of Illinois [6] the Court found that the failure of the State of Illinois to provide for appellate review in noncapital cases for indigents who could not afford the cost of purchasing a transcript, when such review was available for all defendants able to purchase transcripts, was an invidious discrimination inconsistent with the guarantees of due process and equal protection of the laws of the fourteenth amendment to the federal constitution. In Eskridge v. Washington State

Bd. of Prison Terms and Paroles,[7] the Supreme Court declared invalid a provision of the State of Washington's criminal system which conferred on the trial judge the power to withhold a trial transcript from an indigent upon a finding that "justice would not be promoted * * * in that defendant has been accorded a fair and impartial trial, and in the Court's opinion no grave or prejudicial errors occurred therein." The Supreme Court held that the conclusion of the trial judge that there was no reversible error in the trial could not be an adequate substitute for the right to a full appellate review available to all defendants in Washington who could afford the expense of a transcript. In Burns v. State of Ohio,[8] it was held that the State of Ohio could not constitutionally require that an indigent defendant in a criminal case pay a $20 filing fee before permitting him to file a motion for leave to appeal in one of its courts. The Supreme Court said that once the state chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty.

In Smith v. Bennett,[9] the principles of *Griffin* [10] were extended to state post-conviction remedies other than a direct appeal. The Supreme Court held that an applicant for a writ of habeas corpus was denied equal protection of the laws where an Iowa law required that a filing fee be paid by an indigent before an application for a writ of habeas corpus or the allowance of an appeal could be docketed. The court said that to interpose any financial consideration between an indigent and the

tain counsel, and have no means to obtain same; that the Honorable Court has adjudged me a pauper in Criminal Case 65- , as of this date, and wish to proceed in the forma pauperis, on the above captioned cause.

5. See Powell v. State of Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 77 L.Ed. 158, 170 (1932).

6. 351 U.S. 12, 18–19, 76 S.Ct. 585, 100 L.Ed. 891, 898–899 (1956).

7. 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958).

8. 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959).

9. 365 U.S. 708, 709, 81 S.Ct. 895, 6 L.Ed. 2d 39, 40 (1961).

10. Griffin v. People of State of Illinois, supra note 6.

·exercise of a state right to sue for his liberty was to deny the equal protection of the laws. In Lane v. Brown [11] the rules of the Indiana Supreme Court required that a transcript be filed in order to confer jurisdiction upon the court to hear an appeal from a denial of a writ of error coram nobis. However, only the public defender could procure a transcript for an indigent— the indigent having no right to procure a transcript for himself and appeal pro se, or the right to secure the appointment of another lawyer for that purpose. Thus, a person with sufficient funds could appeal as of right to the Supreme Court of Indiana from the denial of a writ of error coram nobis, but the indigent, at the will of the public defender, could be cut off entirely from any appeal at all. In this case the public defender had refused to represent an indigent on appeal, and thus secure a transcript, because of his belief that an appeal would be unsuccessful. The United States Supreme Court, applying the principles of Griffin v. People of State of Illinois,[12] Burns v. State of Ohio,[13] Eskridge v. Washington State Bd. of Prison Terms and Paroles,[14] and Smith v. Bennett,[15] held that the Indiana procedure as it dealt with indigents did not meet constitutional standards.

Coppedge v. United States,[16] dealt with a situation where an indigent applied to the federal court of appeals for leave to appeal in forma pauperis after the federal district court, under 28 U.S.C. § 1915,[17] had denied the indigent's application to appeal in forma pauperis on the ground that the appeal was not taken in good faith. The Supreme Court held that when an indigent defendant, denied leave to appeal in forma pauperis by the district court, applies to the court of appeals for leave to appeal, that court, when the substance of the applicant's claim could not be adequately ascertained from the face of the application, must provide the applicant with both the assistance of counsel and a record of sufficient completeness to enable him to attempt to make a showing that the district court's certificate of lack of good faith is in error, and that leave to proceed with the appeal in forma pauperis should be allowed. If, with such aid, the applicant then presents any issue for the court's consideration not clearly frivolous, leave to proceed in forma pauperis must be allowed. In Draper v. State of Washington,[18] indigent defendants sought to appeal under Washington rules. These rules provided in effect that a defendant could obtain a free transcript only if the judge, who had presided at the trial and had already overruled the defendant's motion for a new trial, as well as his objections to evidence and to the conduct of the trial, found that the defendant's contentions were not frivolous. The finding of frivolity was subject to review without any direct scrutiny of the relevant aspects of what actually occurred at the trial, but rather with examination only of what the parties argued at the hearing on the transcript motion and what the judge recalled and thereafter summarily found as to what went on at the trial. The Supreme Court held

---

11. 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963).

12. Supra note 6.

13. Supra note 8.

14. Supra note 7.

15. Supra note 9.

16. 369 U.S. 438, 446, 82 S.Ct. 917, 8 L.Ed.2d 21, 29 (1962).

17. 28 U.S.C. § 1915 (1965) provides in relevant part:
   (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.
   An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

18. 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963).

that the Washington court could not deny the petitioners' request for review of the denial of the transcript motion without first granting them a record of sufficient completeness to permit proper consideration of their claims. Such a grant, the Court said, would have ensured petitioners a right to review of their convictions as adequate and effective as that which Washington guarantees to nonindigents. The Court said:

> In all cases the duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds—the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions.[19]

In the recent decision of Long v. District Court of Iowa,[20] the United States Supreme Court held that the refusal of a state court to furnish an indigent prisoner with a transcript of a habeas corpus proceeding for purpose of appeal was to deny the prisoner the equal protection of the laws.

Other decisions of the United States Supreme Court have dealt with an indigent defendant's right to have court appointed counsel represent him. In Johnson v. United States [21] the court held that a federal court of appeals must assign counsel to assist one who challenges a certification by a trial court that an appeal was not taken in good faith. In Ellis v. United States [22] it was held that the allowance of an appeal in forma pauperis in the federal courts should not be denied until the indigent

defendant has had adequate representation by counsel. Gideon v. Wainwright [23] establishes the principle that the refusal of a state trial court to appoint counsel for an indigent defendant charged with a felony violates the sixth amendment's guarantee of counsel [24] made obligatory on the states by the fourteenth amendment. In Douglas v. People of State of California [25] indigent defendants were denied the assistance of counsel on appeal. The Supreme Court held this to be a discrimination in violation of the equal protection clause of the fourteenth amendment. The Court said:

> The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between 'possibly good and obviously bad cases,' but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.[26]

Finally, Miranda v. State of Arizona,[27] decided last year, established the principle that, when an individual is taken into custody in connection with a criminal matter

---

19. Id. at 496, 83 S.Ct. at 779, 9 L.Ed.2d at 906.

20. 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (Dec. 5, 1966).

21. 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957).

22. 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

23. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

24. The sixth amendment to the federal constitution provides in relevant part:
    In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense.

25. 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

26. Id. at 357–358, 83 S.Ct. at 817, 9 L.Ed. 2d at 815.

27. 384 U.S. 436, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966).

or is otherwise deprived of his freedom by authorities and is subject to questioning, the protection of the individual's fifth amendment privilege against self-incrimination[28] gives him the right to have counsel represent him. This constitutional guarantee comprehends not merely the right to consult with counsel prior to questioning, but also the right to have counsel present during any interrogation if the individual so desires. As to an indigent suspect or defendant who cannot employ counsel, the Supreme Court said:

> If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney. The financial ability of the individual has no relationship to the scope of the rights involved here. The privilege against self-incrimination secured by the Constitution applies to all individuals. The need for counsel in order to protect the privilege exists for the indigent as well as the affluent. In fact, were we to limit these constitutional rights to those who can retain an attorney, our decisions today would be of little significance. The cases before us as well as the vast majority of confession cases with which we have dealt in the past involve those unable to retain counsel. While authorities are not required to relieve the accused of his poverty, they have the obligation not to take advantage of indigence in the administration of justice. Denial of counsel to the indigent at the time of interrogation while allowing an attorney to those who can afford one would be no more supportable by reason or logic than the similar situation at trial and on appeal struck down in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). [Footnotes omitted.][29]

■ The appellant's motion in this case was made under our Criminal Rules 35(b) and 32(d).[30] Criminal Rule 35(b) was adapted from a federal statute dealing with motions to vacate or set aside sentence in

---

28. The fifth amendment to the federal constitution provides in relevant part:
   No person * * * shall be compelled in any criminal case to be a witness against himself * * *.

29. Supra note 27 at 472, 86 S.Ct. at 1626, 16 L.Ed.2d at 722.

30. Crim.R. 35(b) provides in part:
   A prisoner in custody under sentence of the District Court for the District (Territory) of Alaska or the superior court of the State of Alaska claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States or the Constitution or laws of Alaska, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence or its successor, to vacate, set aside or correct the sentence.
   A motion for such relief may be made at any time.
   Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
   Crim.R. 32(d) provides:
   A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

the federal courts.[31] So far the Supreme Court of the United States has not passed on the question of whether counsel must be appointed for an indigent defendant who is granted a hearing on a motion to vacate or set aside sentence. The lower federal courts have not adopted a rule that counsel must, under constitutional principles, be appointed in such cases—the view of those courts being generally that the appointment of counsel in such proceedings is a matter for the sound discretion of the court at the trial and appellate levels.[32] One state court that has passed on a similar question has held that an indigent defendant's constitutional rights were not abridged by the refusal of a trial court to assign counsel to represent him on his motion to withdraw a plea of guilty.[33] Other state courts, in dealing with post-conviction remedies, have concluded that indigents are entitled to court appointed counsel.[34]

Although the United States Supreme Court has not held that constitutional standards require the appointment of counsel for an indigent prisoner at a hearing of his motion to vacate sentence, we believe that that Court's concern for the constitutional rights of indigent defendants, as exemplified by the cases we have discussed, points the way to that result. We say this because of the fact that the type of hearing a criminal defendant is afforded under Criminal Rule 35(b) depends to a large extent upon whether he can pay for the assistance of counsel. If he can, the trial court passes upon the merits of the motion to vacate only after having the full benefit of a trained lawyer's examination into the record, his research of law, his examination and cross-examination of witnesses, including the defendant, and his marshalling of arguments on the defendant's behalf. If the defendant cannot afford to hire counsel, then he must shift for himself, and because of his lack of knowledge and skill in the law is placed at a distinct disadvantage which may well result in his not being given a complete and meaningful hearing. Any real chance the defendant may have had of showing that his motion had hidden merit is effectively denied him because he must go without a champion in the proceedings. We believe that such a situation draws an unconstitutional line between the rich and the poor, and that when an indigent is forced to handle his own Rule 35(b) motion, the right to a hearing which is granted him does not comport with fair procedure.[35]

We hold that in such circumstances, an indigent defendant who is not afforded counsel to represent him, is denied "equal rights, opportunities and protection under the law", to which he is entitled under article I, section 1 of the state constitution. As we stated in Leege v. Martin,[36] this constitutional guarantee of equal treatment, like the equal protection clause of the fourteenth amendment to the federal constitution, "is the embodiment of the fundamental principle that all men are equal before the law." That principle is violated in a situation such as we have here where the kind of hearing a man gets depends on the amount of money he has.[37] The imposition

---

31. 28 U.S.C. § 2255 (1965). The provisions of this statute will not be quoted here since they are practically identical with the provisions of Alaska Crim.R. 35(b) quoted note 30 supra.

32. Mitchell v. United States, 359 F.2d 833, 835 (7th Cir. 1966); Baker v. United States, 334 F.2d 444, 447–448 (8th Cir. 1964); Dillon v. United States, 307 F.2d 445, 446–447 (9th Cir. 1962); Cerniglia v. United States, 230 F.Supp. 932, 936 (N.D.Ill.1964). See also Huizar v. United States, 339 F.2d 173, 174 (5th Cir. 1964), cert. denied, 380 U.S. 959, 85 S.Ct. 1099, 13 L.Ed.2d 975 (1965).

33. State v. Pelke, 143 Mont. 262, 389 P.2d 164, 168–169 (1964).

34. Duncan v. Robbins, 159 Me. 339, 193 A. 2d 362, 364–367 (1963); People v. Shipman, 62 Cal.2d 226, 42 Cal.Rptr. 1, 397 P. 2d 993, 996–997 (1965).

35. See Douglas v. People of State of California, 372 U.S. 353, 356–357, 83 S.Ct. 814, 9 L.Ed.2d 811, 814 (1963).

36. 379 P.2d 447, 451–452 (Alaska 1963).

37. See Griffin v. People of State of Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891, 899 (1956).

of financial barriers restricting the completeness of a hearing of a motion to vacate sentence of a criminal defendant has no place in our heritage of equal justice under law.[38]

Our decision today was foreshadowed by our earlier decision in Hoffman v. State.[39] In that case a state statute provided that in all proceedings for the revocation of a suspended sentence, the defendant is entitled to the right to be represented by counsel.[40] We held that an indigent probationer had, by virtue of that statute, the same right to be represented by counsel at a probation revocation proceeding as did the probationer who had funds to hire counsel. We said:

> In short, we cannot ascribe to our legislature an intent to draw a distinction, along economic lines, as to which probationers were to be accorded this statutory right to counsel. To construe AS 12.55.-110 as embodying an intended dichotomy between probationers unable to afford counsel and others would, in our opinion, render the statute repugnant to the Equal Protection Clauses of both the Federal and Alaska Constitutions. [Footnote omitted.][41]

■ What we did in *Hoffman* was to refuse to sanction any discriminatory application between indigent probationers and others in the administration of the right to counsel granted by statute. Today we go a step further and hold that where a person seeking relief under Criminal Rule 35(b) has the right, apart from statute, to hire counsel to represent him at the hearing of his motion to vacate or set aside sentence, a prisoner without funds to hire counsel has the right to have counsel appointed by the court to represent him at such hearing. Our decision is limited to the circumstances of this case—where there is a hearing on an indigent prisoner's first application to vacate or set aside sentence. We do not pass upon situations involving successive applications, except to say that if the hearing on a first application is conducted in accordance with the requirements and suggestions found in our decision in Thompson v. State,[42] the likelihood of there being successive applications should be lessened considerably.

The order denying appellant's motion to vacate or set aside sentence is set aside. The case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. The findings of fact and decision of the trial court shall be forwarded to the clerk of this court when filed. The court expresses its appreciation to counsel appointed by this court to represent appellant on this appeal, and relieves counsel of any further responsibility. Counsel shall be compensated for his services in accordance with Administrative Rule 15, as revised July 30, 1966. The appeal heretofore filed shall remain in force until further order.

RABINOWITZ, Justice (concurring).

I concur in the disposition of the case and in Justice Dimond's conclusion that an indigent movant under Criminal Rule 35(b) is entitled to court appointed counsel once the sentencing court has determined that a hearing is required. I reach these conclusions on other than equal protection grounds.

In the lower court appellant sought to set aside his guilty plea and the judgment and commitment which was thereafter entered on the basis that his plea had been coerced. Pursuant to Criminal Rule 35(b), the superior court granted a hearing to determine

38. Burns v. State of Ohio, 360 U.S. 252, 258, 79 S.Ct. 1164, 3 L.Ed.2d 1209, 1213 (1959).

39. 404 P.2d 644 (Alaska 1965).

40. AS 12.55.110 provides as follows:
When sentence has been suspended, it shall not be revoked except for good cause shown. In all proceedings for the revocation of a suspended sentence, the defendant is entitled to reasonable notice and the right to be represented by counsel.

41. Supra note 39 at 646.

42. Opinion No. 334, 412 P.2d 628 (Alaska 1966).

the factual issues which were raised by appellant's motion.

I am of the opinion that once the sentencing court has concluded that a Criminal Rule 35(b) motion is of sufficient substance to require a hearing to resolve factual issues, then the contemplated hearing is adversary in character. At such a hearing I believe it is essential that the indigent movant have the assistance of counsel. Failure to appoint counsel in such circumstances results in fundamental unfairness to an indigent movant.

In Powell v. State of Alabama,* Mr. Justice Sutherland wrote:

> What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law.

The rationale of *Powell* is applicable to the type of hearing involved in this appeal. As Justice Dimond has demonstrated, since *Powell* was rendered by the Supreme Court of the United States the right to counsel for indigents in state cases has been expanded both as to the type of proceedings to which the right appertains and to the timing of effective assistance of counsel.**

Under this court's supervisory powers over the administration of criminal justice in the State of Alaska, I would require counsel to be appointed for all indigents who have been accorded a factual hearing under Criminal Rule 35(b). In so doing we would give recognition to the paramount importance of insuring the integrity and accuracy of our fact-finding processes.

---

* 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932).

** As noted by Justice Dimond, the Supreme Court has used both due process (incorporating the sixth amendment's right to

Alternatively, I am of the belief that denial of assistance of counsel to an indigent in regard to a Criminal Rule 35(b) hearing is fundamentally unfair and violative of the due process clause of article 1, section 7 of the Alaska constitution.

NESBETT, Chief Justice (concurring in part and dissenting in part).

I agree with the majority that this matter must be remanded to the trial court for further proceedings consistent with our holding in Thompson v. State.[1]

I must dissent, however, from that portion of the majority opinion which concludes that a petitioner under Criminal Rule 35(b) has an invariable right to be provided with counsel at state expense, based on that portion of article I, section 1, of the Alaska constitution which states:

> * * * that all persons are equal and entitled to equal rights, opportunities, and protection under the law * * *.

Nor do I believe that such a right exists on any other constitutional ground.

The majority opinion expresses the view that

> although the United States Supreme Court has not held that constitutional standards require the appointment of counsel for an indigent prisoner at a hearing of his motion to vacate sentence, we believe that the Court's concern for the constitutional rights of indigent defendants, as exemplified by the cases we have discussed, points the way to that result.

I do not reach the same conclusion. None of the Supreme Court decisions cited and relied upon by the majority pertain to the rights of an indigent challenging his conviction by collateral attack which is the case now before us. In Douglas v. People of State of California,[2] the defendants had been convicted of felonies and requested

---

the assistance of counsel) and the equal protection clauses in deciding these cases.

1. 412 P.2d 628 (Alaska 1966).

2. 372 U.S. 353, 83 S.Ct. 814, 816, 9 L.Ed. 2d 811 (1963).

counsel on appeal. The request was denied under a California rule allowing the district courts of appeal to deny appointed counsel, if, after an independent investigation of the record, "in their judgment such appointment would be of no value to either the defendant or the court." The United States Supreme Court held that such a procedure lacked the equality demanded by the 14th amendment. In so holding, however, the Court said:

We are not here concerned with problems that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court. We are dealing only with the *first appeal,* granted as a matter of right to rich and poor alike * * * from a criminal conviction. We need not decide now whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California Supreme Court after the District Court of Appeal has sustained his conviction * * * or whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction in this Court by appeal as of right or by petition for a writ of certiorari which lies within the Court's discretion. But it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an 'invidious discrimination.' * * * Absolute equality is not required; lines can be and are drawn and we often sustain

them. * * * But where the merits of *the one and only appeal* an indigent has as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor. 372 U.S. at 356–357, 83 S.Ct. at 816, 9 L.Ed.2d at 814. (Emphasis supplied by the U. S. Supreme Court.)

Alaska's Criminal Rule 35(b) is identical with section 2255 of Title 28, U.S.C. In reviewing a lower court proceeding had under section 2255 the Supreme Court of the United States said:[3]

[W]e think it clear that the sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing. In this connection, the sentencing court *might find it useful* to appoint counsel to represent the applicant. (Emphasis added.)

The federal courts of appeal have uniformly held that the appointment of counsel in a section 2255 proceeding is a matter for the sound discretion of the trial court.[4] Where the circumstances of a defendant or the difficulties involved in presenting a particular matter are such that a fair and meaningful hearing cannot be had without the aid of counsel, conceivably the requirements of the due process clause of the fifth amendment would dictate that counsel be appointed.[5]

In discussing an indigent's right to the assistance of court appointed counsel in 28 U.S.C. section 2255 proceedings the Ninth Circuit Court of Appeals said:

The mandatory requirement of the Sixth Amendment regarding right to counsel does not apply to indigent movants under 28 U.S.C. § 2255. This is the

3. Sanders v. United States, 373 U.S. 1, 21, 83 S.Ct. 1068, 1080, 10 L.Ed.2d 148, 164 (1963).

4. Mitchell v. United States, 359 F.2d 833 (7th Cir. 1966); Fleming v. United States, 367 F.2d 555 (5th Cir. 1966); Baker v. United States, 334 F.2d 444 (8th Cir. 1964); Richardson v. United States, 199 F.2d 333 (10th Cir. 1952).

5. See Dillon v. United States, 307 F.2d 445, 446 (9th Cir. 1962); State v. Weeks, 166 So.2d 892 (Fla.1964). See United States v. Hayman, 342 U.S. 205, 222, 72 S.Ct. 263, 273, 96 L.Ed. 232, 243 (1952) where the Supreme Court noted that "unlike the criminal trial where the guilt of the defendant is in issue * * * a proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction."

general view, it seems soundly based on the underlying purposes of the Amendment.

\*    \*    \*    \*    \*    \*

By interpreting the Amendment as conferring a right to counsel through direct appeal of the original conviction to the Courts of Appeals \* \* \* the accused is assured of representation by counsel throughout those proceedings in which guilt is finally determined and reviewed as a matter of right. *The same need for counsel is not invariably present where post-conviction remedies like motions under § 2255 are involved. They follow original criminal proceedings at every stage of which counsel has been provided \* \* \* they are not a part of the basic processes for determining guilt \* \* \* they may be resubmitted \* \* \* and they are frequently frivolous \* \* \*.*[6]

Here counsel was provided for petitioner at the trial court level. His plea of guilty had been accepted, sentence had been imposed and no appeal was taken. Nearly a year later petitioner moved to vacate sentence on the ground that his plea of guilty had been coerced.

A single uncomplicated question of fact· was raised by petitioner's allegation that the probation officer had threatened to see that his parole was revoked and that he would be charged as a habitual criminal if he did not enter a plea of guilty to the charge of embezzlement. The question of fact would be resolved by the trial court on the testimony of not more than three persons—the petitioner, his court appointed trial counsel, and the probation officer. In my opinion this situation illustrates the wisdom of the federal rule which leaves to the discretion of the trial judge the question of whether the complexity of the issue raised requires the appointment of counsel at state expense to represent petitioner.

It must be remembered that proceedings under Criminal Rule 35(b) occur only after conviction and sentence. If an accused is indigent and so requests, he is provided counsel at state expense for his arraignment, plea, and trial. If convicted and he so requests, he° is again provided counsel at state expense to prosecute an appeal. These safeguards have been established as constitutional rights of an indigent accused, by recent decisions of the Supreme Court of the United States. But after guilt has once been established under the safeguards provided, the Supreme Court has not recognized that the convicted indigent has a constitutional right to court appointed counsel in his every attempt to collaterally attack his sentence.

The possibilities for alleging legal and factual issues requiring determination under Criminal Rule 35(b) are infinite. Experience has shown that by far the greatest number of the applications are without merit and many are frivolous. To require the appointment of counsel at state expense in every such application is not realistic. The question should be left to the discretion of the trial judge who can and should be entrusted with the duty of appointing counsel whenever necessary to adequately protect the petitioner's rights.

6. Dillon v. United States, 307 F.2d 445, 446, and n. 3 at 446–447 (9th Cir. 1962). (Emphasis added.)