228 F.2d 827
 UNITED STATES of America ex rel. Silvio Dario DURANTE, Petitioner-Appellant,
v.
Ralph H. HOLTON, District Director of Immigration and Naturalization Service, United States Department of Justice, Respondent-Appellee.
 No. 11521.
 United States Court of Appeals Seventh Circuit.
 January 11, 1956.
 Rehearing Denied February 7, 1956.
 
 Matthew Steinberg and Salvatore S. Oddo, Chicago, Ill., for appellant.
 Robert Tieken, U. S. Atty., Anna R. Lavin, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.
 Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Upon the facts set forth in the amended petition for a writ of habeas corpus filed by Silvio Dario Durante,[1] and those facts set forth in the answer of Ralph H. Holton, District Director of United States Immigration and Naturalization Service,[2] to the extent that they were not denied by Durante's reply, the district court on April 14, 1955 dimissed the amended petition and remanded Durante to the custody of respondent. This appeal followed.
 
 
 2
 Relevant facts appear in the following statement.
 
 
 3
 Durante, a native and citizen of Canada, entered the United States on December 9, 1926. On July 1, 1952 a warrant for his arrest was issued by respondent's predecessor charging that he had been found in the United States in violation of the Immigration Act of February 5, 1917[3] for the reason that he had been sentenced more than once to imprisonment for terms of one year or more because of convictions in this country of crimes involving moral turpitude, committed after entering this country, to wit: forgery, second degree, and burglary. Following a hearing a warrant of deportation to Canada was issued on December 4, 1953. He was taken into custody thereunder and the instant proceeding was filed in the district court. That court directed that Durante be given another hearing, whereupon a special inquiry officer concluded that Durante was deportable on the charges stated in the warrant of arrest and upon an additional charge under § 241(a) (4) of the act of June 27, 1952,[4] on the ground that, since the date of entry, Durante had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Durante's appeal to the board of immigration appeals was dismissed. Another warrant was issued on February 7, 1955, directing Durante's deportation to Canada on all of the aforesaid charges.
 
 
 4
 Upon a plea of guilty entered by Durante to two counts charging him with forgery, on a count charging him with assault with a deadly weapon and on a count charging him with a jail break, the district court of Sherman County, Kansas on September 14, 1946, sentenced him on each of said counts to an indeterminate term in the state penitentiary, all of said sentences to run concurrently. He was thereupon imprisoned and served said sentences.
 
 
 5
 The burglary conviction was entered on March 25, 1952 by the criminal court of Cook County, Illinois, on Durante's plea of guilty. He was then sentenced to the Illinois state penitentiary for a term of not less than one year and not more than two years, which sentence he served.
 
 
 6
 As a part of his answer respondent moved to strike paragraph five of the amended petition "on the ground that this proceeding may not be used to collaterally attack a conviction in a court of the State of Kansas." A part of said paragraph five, upon which Durante now relies, relates to his conviction in Kansas in 1946 and alleges that after being arrested there he "escaped from the county jail and went to Denver, Colorado, where he surrendered himself to the local police in connection with the said charges of forgery in the State of Kansas, and that before he waived extradition to the State of Kansas he had been promised probation if he returned; however, when he entered a plea of guilty to the crime of forgery, second degree, he was sentenced to the State Penitentiary." Respondent never obtained a ruling from the district court on his motion to strike and he never denied the truth of the above quoted allegations. Hence, we shall accept them as true for our present purpose.
 
 
 7
 Respondent's answer denied the following allegations, inter alia, of paragraph six of the amended petition, pertaining to his plea of guilty in the Illinois court: respondent "was not informed that under his plea of guilty he was liable to deportation nor was he informed that he had a right to seek the recommendation of the sentencing judge not to be deported."
 
 
 8
 Inasmuch as the district court heard no evidence, it is conceded by the government that these alleged facts must be taken as true in the case now before us.
 
 
 9
 1. Durante contends that his plea of guilty, which resulted in his conviction in Kansas, was induced by his being "affirmatively misinformed of the consequences of his plea", and that, although he was doubtless advised as to the sentence that might be imposed upon him by the court in Illinois, he "was never advised that a further consequence of that sentence would or might be deportation * * *." He charges therefore that his convictions, both in Kansas and Illinois, "offend * * * the Fourteenth Amendment" of the United States constitution.
 
 
 10
 We are here confronted with the question of whether Durante, on the facts stated, was denied the due process of law which the Fourteenth Amendment requires. Marino v. Ragen, 332 U.S. 561, at page 562, 68 S.Ct. 240, 92 L.Ed. 170.
 
 
 11
 It appears that to avoid prosecution on a forgery charge, Durante escaped from the county jail in Kansas and went to Colorado where he surrendered to local police in connection with the Kansas charges, and that, before waiving extradition to Kansas, "he had been promised probation if he returned." Having returned to Kansas he entered a plea of guilty to the crime of forgery inter alia. It is not charged that anyone promised him probation if he would plead guilty, although, if we resolve the recital of facts in favor of Durante, it could be said that they indicate that he was induced by a promise of probation to enter a plea of guilty. Following his plea of guilty he was sentenced to the state penitentiary, instead of being placed on probation.
 
 
 12
 It is significant that in setting forth in his amended petition the facts in regard to the alleged promise to him, he fails to state who made the promise. Obviously, if someone authorized to represent the prosecution in Kansas made the promise, the legal effects thereof would be different than if the promise were made by someone having no authority to speak for the prosecution. We would resolve the doubt as to authority of the promisor in favor of Durante if the circumstances present at the time could have reasonably raised doubt in his mind as to the authority of that person. However, we are not furnished by Durante with a recitation of any circumstances throwing light upon the authority, real or claimed, of the person making the alleged promise. Whether it was a law enforcing officer from Kansas or a Denver police officer, a bus driver, a railroad conductor, or a bartender we do not know. Before he had a right to rely upon the promise he had to have a reasonable belief that the person making the promise had authority from the state of Kansas to do so. The facts appearing in this record are utterly lacking to support Durante's contention as to the Kansas conviction.
 
 
 13
 In his brief in this court, Durante admits that in the Illinois court he was represented by counsel of his choice. He there pleaded guilty to burglary. He does not contend that, before he entered that plea, the trial judge failed to inform him of the possible consequences of such a plea, insofar as the possible punishment to be meted out by the Illinois court might be. He makes instead the rather remarkable contention that, while he was represented by his own attorney, it was the duty of the judge to tell Durante that a consequence of any sentence that the court might impose upon a plea of guilty "would or might be deportation from" the United States. There is no showing that the Illinois judge even knew that Durante was not a citizen of this country. Even if he had known it, there was no duty upon the court to advise Durante in regard to the possibility of deportation.
 
 
 14
 3. We conclude that neither the alleged promise made to Durante by some unknown person in Denver, Colorado or the failure of the Illinois judge to advise Durante about a possible future deportation proceeding, deprived him of any of his rights under the Fourteenth Amendment of the United States constitution. Hence, the judgments of conviction, upon which the warrant of deportation is based, are not the result of proceedings in which Durante was denied due process of law under the Fourteenth Amendment.
 
 
 15
 Accordingly the judgment of the district court is affirmed.
 
 
 16
 FINNEGAN, Circuit Judge, concurs in the result.
 
 
 
 Notes:
 
 
 [1]
 Herein referred to as Durante
 
 
 [2]
 Herein referred to as respondent
 
 
 [3]
 39 U.S. Stat. at Large 889, 8 U.S.C.A. § 1101 et seq
 
 
 [4]
 8 U.S.C.A. § 1251(a) (4)