Hillman INGRAM, Appellant,

v.

STATE of Alaska, Appellee.

No. 959.

Supreme Court of Alaska.

Feb. 5, 1969.

**162**

David B. Ruskin, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., and Russell J. Gallagher, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant entered a plea of guilty to second degree murder and was sentenced to 15 years imprisonment. He moved to vacate the sentence on the ground that at the time he entered his guilty plea he was not aware of the consequences of his actions. The motion to vacate was denied by the court below and this appeal followed.

Originally appellant had entered a not guilty plea to first degree murder. At the time he withdrew his not guilty plea and entered a plea to second degree murder the following transpired:

THE COURT: Mr. Ingram, would you stand, please, now? Do you understand thoroughly what we're doing here?

MR. INGRAM: Yes, I do, Your Honor.

THE COURT: Your attorney has discussed it thoroughly with you, has he not?

MR. INGRAM: Yes, he has.

THE COURT: Is it your desire at this time to withdraw your plea of not guilty that you previously entered to this charge?

MR. INGRAM: Yes. sir.

THE COURT: Now the plea of not guilty you entered, of course, is a plea of not guilty to first degree murder, but it likewise would cover the other included offenses, I presume. Is it your desire to withdraw this plea?

MR. INGRAM: Yes, sir.

THE COURT: The withdrawal of—not guilty previously entered to the charge of first degree murder is withdrawn. You may sit down.

\*    \*    \*    \*    \*    \*

THE COURT: Mr. Ingram, if you'll stand again, please, now? You understand now that you are presently charged with first degree murder?

MR. INGRAM: Yes, sir.

THE COURT: The District Attorney is willing, if you wish to do so, to have you plead guilty to second degree murder. I want you to thoroughly understand that we're not trying to force you to do anything here. It's your choice, and if you want to stand trial on the first degree murder charge, the jury is waiting and we'll try it. Now, with all that in mind, what is your desire? Do you wish to plead to second degree murder or what do you want to do?

MR. INGRAM: Plead to second degree.

THE COURT: All right. I take it that that means then that you wish to plead guilty to a charge of second degree murder, a lesser included offense in the Indictment that we have here, is that right?

MR. INGRAM: That's right.

THE COURT: The plea of guilty may be entered to the charge of second degree murder, a lesser included offense in the Indictment that we have here. You may sit down, sir.

Criminal Rule 11 provides:

A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or stands mute or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

Appellant contends, and appellee concedes, that the mandate of this rule was not complied with by the superior court.

In order for a court to make the determination called for by the rule, something more than a routine inquiry or a perfunctory examination is required. There must be an investigation of the circumstances under which the guilty plea is made of sufficient thoroughness so that objectively it could be concluded that the defendant was entering his plea voluntarily and with understanding of the nature of the charge against him.[1] Such an investigation was not made here. It is true that the questioning by the judge, aimed at ascertaining whether appellant wished to plead guilty, had bearing on the issue of whether the plea was made voluntarily. But there was no inquiry bearing on the question as to whether appellant fully understood the consequences of entering a plea of guilty to second degree murder. The court had the duty of determining whether this was the case, and this could be done only by a more comprehensive examination of the circumstances under which the plea was made. The examination conducted by the court in this case fell short of the kind that was required. Criminal Rule 11 was not complied with.

If the plea was in fact entered voluntarily and with an understanding of the nature of the charge, the error in failing to comply with the rule would be harmless and there would be no reason to vacate appellant's sentence in order to allow him to withdraw his guilty plea. In this situation, however, the burden is on the state to demonstrate that the plea was in fact voluntary and with an understanding of the nature of the charge.[2]

We believe that this burden was not met here. To have understanding, appellant must have had knowledge about what he was doing—knowledge as to the nature of the guilty plea, including the consequences. It is doubtful from the record that he had the requisite knowledge of the consequences.

Appellant was 55 years old and had little formal education. Dr. Langdon, an Anchorage psychiatrist, reported that:

Intellectually, he [appellant] seemed of dull normal or borderline intelligence though this was quite difficult to estimate because of the pressure of circumstances.

And the report of the Medical Center for Federal Prisoners at Springfield, Missouri, said:

The patient's present level of intelligence functioning seems to be in the low average to average range although one would suspect some depression of this due to his lack of education and his present mental illness.

There was a history of mental illness. A psychiatric examination held shortly after appellant's arrest in the spring of 1961 stated that at the time of the crime appellant was "sufficiently confused as to be unable to cooperate adequately in his own defense." Appellant was then committed to the Medical Center for Federal Prisoners at Springfield, Missouri, where further psychiatric evaluation was made. Appellant was described as:

[A] person who is presently manifesting fundamental disturbances in reality relationships, and in emotional and intellectual processes as consistent with the diagnostic impression of both a schizophrenic reaction and organic brain pathology.

In July 1961 the psychiatric staff at the Springfield, Missouri, medical center concluded that appellant then had a factual understanding of the proceedings against

1. *See* United States v. Lester, 247 F.2d 496, 499–500 (2d Cir. 1957); Domenica v. United States, 292 F.2d 483, 485–486 (1st Cir. 1961); Gundlach v. United States, 262 F.2d 72, 76 (4th Cir. 1958),

cert. denied, 360 U.S. 904, 79 S.Ct. 1283, 3 L.Ed.2d 1255 (1959).

2. Oughton v. State, 420 P.2d 452, 455 (Alaska 1966); Domenica v. United States, 292 F.2d 483, 486 (1st Cir. 1961).

him and would be able to assist with his defense at trial. However, in April 1962 Dr. Langdon again examined appellant and concluded that he was not capable of assisting in his own defense. Dr. Langdon's report stated in part:

> Mr. Ingram at the present time shows the evident marks of schizophrenic reaction which may have been paranoid or acute a year or more ago but shows evidence of chronicity now and is so disorganized and dissociated that it would be more fitting to call it a chronic undifferentiated form of schizophrenia rather than a paranoid type.

On June 1, 1963, appellant was again examined by Dr. Langdon. This time the doctor concluded that appellant was mentally capable of standing trial. However, Dr. Langdon warned that:

> * * * court action be taken as expeditiously as possible inasmuch as Mr. Ingram conceivably could have a relapse if long continued incarceration without trial is carried out.

In addition, Dr. Langdon stated:

> In discussing the charges against him, he indicated that he was aware that he was charged with first degree murder and stated *that he did not exactly understand the difference between the various degrees of murder and manslaughter but assumed that he could get his knowledge from his attorney.* (Emphasis added.)

It was in September 1963 that appellant withdrew his plea of not guilty to first degree murder and entered his plea of guilty to second degree murder. Finally, at the hearing of appellant's motion to vacate sentence in September 1967 Dr. Langdon testified that appellant was still mentally ill. He said:

> At the present time Mr. Ingram still suffers from a mental illness, namely, a schizophrenic reaction. Cronic [sic] undiferentiated [sic] type but that it's in good to fair remission at the present time. That this is shown mainly in some of the fragments of his delusional ideas and his—but that on the whole, that's why I feel at the present time he is competent to understand the proceedings at least in, ah, basic English. And should be able to co-operate with an attorney.

■ In view of appellant's mental deficiencies we believe it was incumbent upon either appellant's counsel or the court, before the court accepted a plea of guilty to second degree murder, to attempt to explain to appellant as clearly as possible the difference between first and second degree murder and the consequences of entering a plea of guilty to second degree murder. This crime carries with it a mandatory minimum sentence of 15 years.[3] Appellant's testimony at the hearing of the motion to vacate sentence is difficult to comprehend. But the gist of it seems to be that he thought he would be sentenced to life imprisonment if convicted of first degree murder, that he would have to serve only one year if he pleaded guilty to second degree murder, and for that reason he entered his guilty plea. It is true that at the hearing appellant's counsel[4] testified that he and appellant had discussed the minimum sentence for second degree murder. But counsel also testified that he doubted that appellant understood that he could possibly have to serve 15 years.

■ The United States Supreme Court has said:

> Out of just consideration for persons accused of crime, courts are careful that

---

3. AS 11.15.030 provides:
   [That whoever] purposely and maliciously kills another is guilty of murder in the second degree, and shall be sentenced to imprisonment for a term of not less than 15 years to life.

4. Counsel on this appeal was not counsel for appellant at the time he entered his guilty plea.

a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.[5]

We need not explore here the scope of the term "consequences".[6] Suffice it to say that an "understanding of the nature of the charge", within the meaning of Criminal Rule 11, encompasses an awareness of the consequences of a guilty plea, that one of the consequences an accused must have knowledge of, gained either from his counsel or the court, is not only the maximum sentence that might be imposed,[7] but the mandatory minimum sentence as well,[8] that under the circumstances we have related it is highly questionable that appellant knew of the consequences of his plea so far as the mandatory minimum sentence was concerned, and that in fairness and justice the sentence should be vacated and appellant allowed to withdraw his plea of guilty to second degree murder.

■ At the hearing of the motion to vacate sentence Dr. Langdon testified that when the killing took place in 1961 appellant was so mentally ill that his sense of right and wrong were impaired to the extent that he was incompetent under the McNaghten Rule.[9] From this appellant argues that he was insane at the time of the commission of the crime, and therefore justice requires withdrawal of the guilty plea and a trial. Appellee argues that what appellant is doing is making a collateral attack on the judgment of conviction, and that this should not be allowed because a voluntary plea of guilty is an admission of all the elements of the crime. We need not pass upon this point because of our decision on the grounds stated that the sentence should be vacated and appellant be allowed to withdraw his plea of guilty to second degree murder. Whether or not appellant has a defense to the charge of murder based upon insanity will be determined at his trial.

The order denying appellant's motion to vacate sentence and to allow him to withdraw his plea of guilty to the charge of second degree murder is reversed. The case is remanded to the superior court for further proceedings consistent with the views expressed in this opinion.

5. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927). As to the requirement that an accused be advised of the consequences of a plea of guilty, see Annot., 97 A.L.R.2d 549 (1964).

6. See United States v. Cariola, 323 F.2d 180, 186 (3d Cir. 1963).

7. Combs v. United States, 391 F.2d 1017 (9th Cir. 1968); James v. United States, 388 F.2d 453, 456 (5th Cir. 1968); Harper v. United States, 368 F.2d 53, 55–56 (10th Cir. 1966).

8. Advisory Comm. on the Criminal Trial, Pleas of Guilty § 1.4(c) (ii), at 25, 27–28 (ABA Project on Minimum Standards for Criminal Justice, Tentative Draft, Feb. 1967).

9. Under what is termed the McNaghten Rule, in order to establish a defense on the grounds of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong. See Chase v. State, 369 P.2d 997, 998 n. 2 (Alaska 1962).