In the Matter of Phillip Anthony WHITE,
a minor under the age of eighteen
years, Appellant,

v.

STATE of Alaska, Appellee.

No. 1051.

Supreme Court of Alaska.

Aug. 8, 1969.

M. Ashley Dickerson, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty. and H. Bixler Whiting, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and RABINOWITZ, BONEY, and CONNOR, JJ.

OPINION

CONNOR, Justice.

This is an appeal from a disposition order in a juvenile proceeding which placed appellant on probation for three years.

On November 7, 1967, a petition was filed in the district court alleging that appellant, then a child of twelve, had committed three acts of physical assault and one act of indecent exposure. The petition was specific about the time, place and manner where each of these acts occurred. The matter was assigned to Judge Hanson of the district court, where jurisdiction over juvenile matters then resided. On the same day an arraignment was held, a request for the appointment of counsel was made, and a temporary order placing appellant in the custody of the Department of Health and Welfare was entered.

On the next day James C. Merbs was appointed as counsel for appellant. Mr. Merbs' first act as counsel was to move to have the temporary order of November 7, 1967, quashed for lack of jurisdiction and because appellant was not represented by counsel at the time of its entry. His motion was successful, and the court, on November 22, 1967, quashed its earlier order. Mr. Merbs later moved, with the written consent of appellant and his mother, for the administration of a lie detector test to appellant under Children's Rule 25. The motion was granted on condition that the results should be admissible in evidence.

After a hearing on December 15, 1967, the court entered an order sustaining the allegations of the petition, and a temporary order was entered placing appellant in the care of his mother. At the hearing the three victims of the alleged assaults and the witness to the indecent exposure testified to the acts charged and to the identity of appellant as the perpetrator. The officer who administered the lie detector test also testified. All of these witnesses were cross-examined, the officer quite vigorously. Appellant called no witnesses. Mr. Merbs stated that he could produce character witnesses, but that he believed the Department of Health and Welfare would discover them in its handling of the case.

Although the temporary order was entered, a final disposition of the case was delayed by continuances and motions until August 15, 1968. In the meantime, by an amendment to AS 47.10.290(1), jurisdiction of juvenile matters was transferred from the district court to the superior court on January 1, 1968. At some time thereafter Mr. Merbs and appellant's mother advised Judge Hanson, acting as a master for the superior court, that they could no longer work together. With the permission of Judge Hanson, and of Judge Butcher of the superior court, Mr. Merbs was allowed to withdraw as counsel on February 23, 1968. On March 6, 1968, appellant's present counsel was appointed to represent him.

On March 12, 1968, appellant's new counsel moved for peremptory disqualification of Judge Butcher under AS 22.20.022; the motion was denied; the denial was reviewed by this court and was affirmed. In re White, 445 P.2d 813 (Alaska 1968). Appellant then moved for a trial de novo, based largely on affidavits of appellant's mother and Sylvia Donisi, attached to the motion, containing alibi evidence which would tend to absolve appellant of two of the assault charges. The motion claimed that there was newly discovered evidence, but appellant's brief before us clarifies this by stating that this evidence was available at the time of the hearing of December 15, 1967, but was not put in because of a decision made by Mr. Merbs.

The motion for new trial was heard by Judge Hanson on April 17, 1968. He granted the motion and disqualified himself from further participation in the mat-

ter. Judge Butcher overruled the grant of the motion, in effect, by ordering that the case proceed to a disposition hearing, which was held on August 15, 1968. As a result of the hearing an order of disposition was entered on August 21, 1968. It is from that order that appeal is now taken.

That order placed appellant in the custody of the Department of Health and Welfare, but with appellant to be on probation. It provided that appellant should receive psychiatric treatment or counseling, and that he be placed in a home deemed suitable by the Department of Health and Welfare. Psychiatric treatment had been recommended in reports filed with the court by a probation officer and a clinical psychologist.

■ Appellant's first point is that he was denied an opportunity to defend himself adequately under the standards required by In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). But unlike the situation of *Gault*, appellant was afforded counsel who did appear and defend him at all material stages of his proceeding. Appellant is critical of the manner in which he was defended at the hearing of December 15, 1967, because his then counsel called no witnesses on his behalf. This, without more, does not amount to a deprivation of the opportunity to defend against the allegations of the petition. We find that the requirements of *In re Gault* were fulfilled.

■ Appellant's second point is that the disposition order and the earlier order of December 15, 1967, were rendered on completely ex parte testimony. He correctly argues that due process requires notice and an opportunity to defend, and that these rights include at least the right to examine the witnesses against him, to offer testimony, and to be represented by counsel. In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948). But appellant was protected in all of these rights. That his counsel at the December 15, 1967, hearing chose not to call witnesses does not mean that there was a deprivation of the right to call them. Nor can the happenings below be characterized fairly as a judg-

ment rendered on completely ex parte testimony. An ex parte proceeding is one in which relief is obtained by one party without notice to or an opportunity to contest being given to other parties who will be bound or directly affected by the proceeding. Here appellant did have notice, was represented by counsel, and was given an opportunity to defend. The order was not based on ex parte testimony.

■ Appellant's third point is that by not being given a chance to defend he was denied due process of law. We have already disposed of the question of whether appellant was afforded a chance to defend. Appellant claims that because Judge Hanson disqualified himself on April 17, 1968, it demonstrates that appellant was sentenced by one "admittedly prejudicially partial, and that on the basis of ex parte testimony." It is true that Judge Hanson, as master, is one of the signators of the disposition order, together with Judge Butcher. However, the record reveals that the reason Judge Hanson disqualified himself was that, having granted a new trial, he was concerned that if he heard the matter he might be affected by what he had learned in the previous hearing which he had conducted. The cause of his disqualification appears not to be any personal bias on his part but his desire that, if there was to be a new trial, appellant be tried by a judge who had no previous knowledge of the matter. When Judge Butcher, in effect, overruled the grant of a new trial, the cause of disqualification no longer existed. We are unable to conclude that appellant was sentenced by a biased or partial judge.

■ Appellant's last point is that the court erred in not granting a trial de novo after the appointment of appellant's present counsel. The supporting argument is mostly to the effect that appellant's previous counsel was derelict in not presenting witnesses and evidence on behalf of appellant.

■ This court previously has treated claims that due process was violated because the incompetence of counsel rendered

ineffective the legal assistance to which a criminal defendant is entitled. Anderson v. State, 438 P.2d 228, 230 (Alaska 1968); Mead v. State, 445 P.2d 229, 233 (Alaska 1968). The criterion employed is that if the conduct of counsel was so incompetent as to deprive his client of a trial in any genuine sense—making that trial a mockery and a farce—then the defendant is entitled to a new trial. Because the ruling in *Gault,* supra, requires as a matter of due process that counsel be provided to a juvenile in any proceeding which may result in commitment to an institution, there is no doubt that the same test of adequacy of representation should be employed in both criminal cases and such juvenile proceedings. Under AS 47.10.080(b) (1), appellant could have been confined to an institution.

■ The "mockery and farce" test is a relatively stringent one. As in Mead v. State, supra, and Anderson v. State, supra, we must consider the entire proceedings and the whole record to decide whether counsel's conduct fell short of the mark. The only workable standard is to determine whether the proceedings as a whole have judicial character. Particular errors or claimed errors of counsel are not enough. The proceedings must be so tainted that there was an absence of a genuine trial in any reasonable sense. As the court observed in Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667 (1945), cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002:

> "Few trials are free from mistakes of counsel. How much these mistakes contributed to the result can never be measured. There are no tests by which it can be determined how many errors an attorney may make before his batting average becomes so low as to make his representation ineffective." 148 F.2d, at 670.

Appellant's claim is premised largely on the failure of counsel to call his mother and Sylvia Donisi as alibi witnesses. According to the affidavits in the record they would have testified that appellant was with them when two of the four alleged incidents occurred.

Analogous cases are not wanting. In Keys v. Dunbar, 229 F.Supp. 703 (S.D.Cal. 1964), a habeas corpus petitioner had been convicted of three counts of abortion. He claimed inadequate representation because his counsel had submitted the case on the transcript of the preliminary hearing and had not called two alibi witnesses as to one of the counts charged. At the habeas corpus hearing the trial counsel explained that his strategy was to prevent the state from strengthening the corroboration of the testimony of one of the victims. The court denied the petition, partly because the alibi witnesses would not have prevented conviction under the other counts, and partly because representation was adequate. It stated:

> "These post-mortem hearings on the efficacy of a trial lawyer leave much to be desired. There are so many things for a trial lawyer to evaluate, many of which are never available in any record, that it is impossible for a court to determine the validity of the reasons for his judgment. In many instances, merely talking to a witness for a short time will disclose that the witness' attitude, demeanor, or manner is such that if called it might well cause the loss of the case. * * * These considerations cannot and do not appear in the records which come before these courts for consideration. There appears good reason for the rule that an attorney's conduct must be so incompetent as to make the trial a farce." 229 F.Supp., at 705.

In O'Malley v. United States, 285 F.2d 733 (6th Cir. 1961), petitioner claimed that his counsel's failure to call witnesses favorable to him denied him the effective assistance of counsel. In affirming the denial of the petition, the court said:

> "In the opinion of trial counsel it may be advantageous not to cross-examine a certain witness, or not to use a witness who, although helpful to the defendant in certain respects, could be made a harm-

ful witness on cross-examination. The testimony of prospective witnesses relied upon by a defendant may prove to be overvalued by the defendant and ineffective when fully developed and analyzed by defense counsel in his pretrial preparation. Counsel's decision not to subpoena or use certain witnesses is often a matter addressed to the judgment of the trial attorney." 285 F.2d, at 734.

We find these cases applicable to appellant's claim of error. There is no feasible way for us to evaluate the many factors which might have entered into the decision of Mr. Merbs. He may have felt that the alibi witnesses were ineffective or that they would not hold up under cross-examination. It is not for us to speculate any further. Mr. Merbs may have been reluctant to cross-examine the state's witnesses extensively because it might strengthen the case against his client. Again, it is not for us to speculate. It is noteworthy that Mr. Merbs conducted a searching cross-examination of the officer who conducted a polygraph test on appellant. There is no indication that counsel was resting on his oars during the hearing of December 15, 1967. From what we can gather from the record, he was attempting to get the best disposition that he thought he could obtain for his client. Among other things the temporary order of December 15, 1967, permitted appellant to continue living at home with his mother. And we have noted that Mr. Merbs, upon first entering the case, managed to have an earlier order, which placed appellant in the custody of the Department of Health and Welfare, quashed in its entirety. We are unable to find from the record any lack of diligence on the part of counsel.

From our consideration of the entire record we conclude that the proceedings below had judicial character, that they were not a mockery or a farce, and that appellant received a fair hearing within the dictates of due process of law.

The order of disposition is affirmed.

DIMOND, J., not participating.