Francisco **TAFOYA,** Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1429.

Supreme Court of Alaska.

Aug. 11, 1972.

Stanley P. Cornelius, Anchorage, for appellant.

Seaborn J. Buckalew, Jr., Dist. Atty., Anchorage, John E. Havelock, Atty. Gen., Juneau, Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and CONNOR and ERWIN, JJ.

## OPINION

BONEY, Chief Justice.

Francisco Tafoya appeals from the denial of his motion to withdraw his guilty plea.

On December 30, 1965, Tafoya, together with his codefendant Alberto Castro, pleaded not guilty to charges of kidnap and rape. Almost a year later, as a result of plea bargaining, they were permitted to withdraw their pleas. The kidnap charge was then dismissed, and they pleaded guilty to rape. The court followed the prosecutor's recommendation that Tafoya be sentenced to three years, suspended, and that he serve two years on probation.

Tafoya is an alien, a Mexican citizen. He is thus deportable for conviction of a crime involving moral turpitude under 8 U.S.C. § 1251(a) (4).[1] However, such a conviction will not furnish grounds for deportation if the sentencing court, at the time of sentencing or within 30 days thereof, makes a recommendation to the Attorney General of the United States that the alien not be deported.[2]

From the record it is apparent that the attorneys then representing Tafoya and Castro knew that their clients were aliens. A recommendation against deportation was not sought either during plea bargaining or at the time that the guilty pleas were entered apparently neither attorney was aware either of the possibility of deportation or of the means to forestall such a possibility. Counsel for Castro was first informed of the threat of deportation by Castro and Tafoya on December 1, 1966, twenty-seven days after they had pleaded guilty.

Counsel for Castro immediately moved to amend the judgments to include a recommendation that neither Castro nor Tafoya be deported.[3] The superior court denied the motion to amend the sentences of Tafoya and his codefendant. In so ruling, the court specifically declined to recommend either that Tafoya be deported or that he not be deported. Approximately two months later, Tafoya, through his own attorney, again sought to amend the sentence by having the trial court make a recommendation to the Attorney General against deportation. Contrary to the state's earlier position, on this occasion it did not oppose Tafoya's motion. Apparently, because of the lack of opposition the

1. 8 U.S.C. § 1251(a) (4) provides:
    (a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

    .    .    .    .    .

    (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial . . . . .

2. 8 U.S.C. § 1251(b) provides:
    The provisions of subsection (a) (4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and un-

conditional pardon by the President of the United States or by the Governor of any of the several States, or (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the [Immigration and Naturalization Service], and prosecution authorities, who shall be granted an opportunity to make representations in the matter. The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a) (11) of this section.

3. Counsel for Castro represented both men because counsel for Tafoya was then out of town.

superior court granted Tafoya's motion to amend the sentence.[4]

Tafoya's two-year probationary period expired in November 1968, at which time the Division of Corrections recommended that his probation be terminated. The recommendation that probation be terminated was approved by the sentencing judge. One year later, when Tafoya's three-year suspended sentence was completed, he moved to withdraw his plea of guilty and to vacate the sentence he had fully served.[5] The reasons advanced for taking this action were that he had been ordered to leave the United Stats as a result of his conviction of the crime of rape and that he would not have pleaded guilty had he known of the possibility of deportation. After the hearing, Tafoya's petition for post-conviction relief was denied. Tafoya brings this appeal from the superior court's denial of his application for post-conviction relief.

Tafoya argues first that his unawareness of all of the consequences of a guilty plea renders his plea involuntary and that therefore he must be allowed to withdraw it.

Alaska Rule of Criminal Procedure 11 provides in pertinent part that:

> A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.

Unlike Federal Rule of Criminal Procedure 11, the federal counterpart to our rule, Alaska Rule of Criminal Procedure 11 does not explicitly require that the trial court first address the defendant personally to determine whether the plea is made voluntarily and with understanding of the nature of the charge and "the consequences of the plea."[6] In Ingram v. State[7] this

4. The amended judgment reads in part as follows:

> IT IS FURTHER RECOMMEND-ED BY THE COURT to the Attorney General of the United States of America that the above-named defendant, who is an alien, not be deported from the United States of America, such recommendation being made by the Court pursuant to the provisions of Title 8, U.S.C., Section 1251(a) (4) and (b).
>
> IT IS FURTHER ORDERED AND ADJUDGED that the foregoing amendment provisions shall be considered for all purposes as having been included in the original Judgment and Order of Probation rendered and entered in the above-entitled case.

From the record it is unclear what effect this nunc pro tunc recommendation has for purposes of 8 U.S.C. § 1251(b). Since Tafoya's deportation is still being sought, we assume that the nunc pro tunc recommendation against deportation was not given any consideration by the Attorney General of the United States.

5. Tafoya's motion to withdraw his guilty plea was made under Alaska R.Crim.P. 35(b) which provides generally for post-conviction relief rather than under Alaska R.Crim.P. 32(d) which provides as follows for the withdrawal of guilty pleas:

> A motion to withdraw a plea of

guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

We decline, however, to dispose of this appeal on the basis of this procedural error. We recognize that Tafoya's present counsel could reasonably have read Nichols v. State, 425 P.2d 247 (Alaska 1967), and Thompson v. State, 412 P.2d 628 (Alaska 1966), as approving the use of Rule 35(b) as a vehicle for the post-conviction withdrawal of a guilty plea.

In future cases, when a defendant wishes to withdraw a plea of guilty or of nolo contendere after the imposition of sentence, he should seek his relief under Alaska R.Crim.P. 32(d). Alaska R.Crim. P. 35(b) is not to be used as a substitute for Alaska R.Crim.P. 32(d).

6. At the time Tafoya withdrew his not guilty plea and entered his plea of guilty, the trial court made what was at best only a perfunctory inquiry as to whether Tafoya's plea was made "voluntarily with understanding of the nature of the charge."

7. 450 P.2d 161 (Alaska 1969).

court construed Alaska's Rule 11 in a manner which in effect brought our Rule 11 into conformity with the provision found in Federal Rule 11, which conditions the voluntariness of a guilty plea on the accused's understanding of the nature of the charge and the consequences of the plea. As we stated in *Ingram:*

> We need not explore here the scope of the term 'consequences'. Suffice it to say that an 'understanding of the nature of the charge', within the meaning of Criminal Rule 11, encompasses an awareness of the consequences of a guilty plea, that one of the consequences an accused must have knowledge of, gained either from his counsel or the court, is not only the maximum sentence that might be imposed, but the mandatory minimum sentence as well. . . .[8]

In reaching this interpretation in *Ingram,* we relied in part on Kercheval v. United States, where the Court said:

> Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.[9]

We are thus faced with the necessity of exploring the scope of the term "consequences," as used in this court's interpretation in *Ingram,* of Alaska Rule of Criminal Procedure 11 in order to reach the ultimate question whether Tafoya has made a sufficient showing of manifest injustice under Rule 32(d) to warrant relief.[10] As in *Ingram,* we turn to federal law.

In United States v. Cariola,[11] which we cited in *Ingram,* the defendant discovered, sixteen years after entering his guilty plea, that his conviction disenfranchised him in a state to which he had moved. The court rejected his application to withdraw his plea, stating that:

> [U]nsolicited advice concerning the collateral consequences of a plea which necessitates judicial clairvoyance of a superhuman kind can be neither expected nor required.[12]

■ Federal judicial precedent, in line with *Cariola,* has established that an accused need not be informed about every conceivable collateral effect the conviction might have prior to the acceptance of a plea of guilty.[13] The leading federal case concerning deportation as a consequence of a guilty plea is United States v. Parrino.[14] Like Tafoya, Parrino had fully served his sentence and was faced with deportation as a result of his conviction when he attempted to withdraw his guilty plea. The court denied Parrino's request, holding that the possibility of deportation was a collateral consequence.[15]

---

8. *Id.* at 165 (footnotes omitted).

9. 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009, 1012 (1927).

10. Wright states that "[a]lthough somewhat different considerations may be involved, the factors relevant on a motion to withdraw a plea of guilty are closely related to those the court must examine before accepting such a plea in the first instance." 2 C. Wright, Federal Practice and Procedure § 537, at 465 (1969) (footnote omitted). Kadwell v. United States, 315 F.2d 667, 669 n. 6 (9th Cir. 1963); United States v. Mack, 249 F.2d 421 (7th Cir. 1957).

11. 323 F.2d 180 (3d Cir. 1963).

12. *Id.* at 186. The distinction between collateral and direct consequences for the purposes of Fed.R.Crim.P. 11 has been implicitly recognized by the United States Supreme Court. *See* Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747, 760 (1970).

13. *See, e. g.,* Meaton v. United States, 328 F.2d 379 (5th Cir. 1964), cert. denied, 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965) (conviction might result in loss of voting rights and right to travel abroad); Redwine v. Zuckert, 115 U.S. App.D.C. 130, 317 F.2d 336 (1963) (conviction might result in an undesirable discharge from the Air Force).

14. 212 F.2d 919 (2d Cir. 1954).

15. *Parrino* presents a situation even more sympathetic than the instant case. Parrino's counsel specifically, but erroneously, informed him that his conviction would *not* lead to deportation. Tafoya's counsel offered no such misinformation.

The *Parrino* rule has been consistently followed in the federal courts.[16] In Joseph v. Esperdy [17] the defendant argued that the federal court should vacate his state conviction because the failure of the state judge to advise him that his conviction would subject him to deportation made his plea involuntary. The court denied him relief, explaining its reliance on the direct-collateral consequences dichotomy as follows:

> [E]ven in this Court, where it is mandated that the full range of consequences be set out [citation to Federal Rule of Criminal Procedure 11] it seems onerous and absurd to expect a judge to explain to each and every defendant who pleads guilty the full range of *collateral* consequences of his plea and, indeed, to anticipate what those collateral consequences are.[18]

We agree. It would indeed be onerous and absurd to require the trial judge to delve into all the peculiarities of each defendant's birth, nationality, occupation, and other circumstances, and to apprise him of all the collateral consequences possibly flowing therefrom. That burden should properly fall on the defendant and his counsel.

■ We therefore hold that the possibility of deportation is a collateral consequence of conviction, Tafoya's ignorance of which did not render his plea involuntary.

■ Having concluded that the burden of advising a defendant of collateral con-sequences falls not on the court, but on the defendant's counsel, we must now consider Tafoya's argument that he was denied adequate assistance of counsel. The essence of his argument is that the failure of his counsel to advise him of the possibility of deportation constituted a deprivation of the effective assistance of counsel as guaranteed him by the United States [19] and Alaska Constitutions.[20]

■ The standard employed in Alaska to test the competency of counsel is well settled. As we stated in White v. State:

> The criterion employed is that if the conduct of counsel was so incompetent as to deprive his client of a trial in any genuine sense—making that trial a mockery and a farce—then the defendant is entitled to a new trial . . . .
>
> The 'mockery and farce' test is a relatively stringent one. . . . [W]e must consider the entire proceedings and the whole record to decide whether counsel's conduct fell short of the mark. The only workable standard is to determine whether the proceedings as a whole have judicial character. Particular errors or claimed errors of counsel are not enough. The proceedings must be so tainted that there was an absence of a genuine trial in any reasonable sense.[21]

The standard was further elaborated upon by this court in Dimmick v. State:

> The right to the effective assistance of counsel requires only that counsel be conscientious and diligent in assisting a de-

---

16. *E. g.* United States v. Sambro, 454 F.2d 918 (D.C.Cir. 1971); United States ex rel. Durante v. Holton, 228 F.2d 827 (7th Cir.), cert. denied, 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484 (1956); Joseph v. Esperdy, 267 F.Supp. 492 (S.D. N.Y.1966); *cf.* United States v. Briscoe, 139 U.S.App.D.C. 289, 432 F.2d 1351 (1970).

17. 267 F.Supp. 492 (S.D.N.Y.1966).

18. *Id.* at 494 (emphasis in original).

19. Amends. VI, XIV.

20. Art. I, § 11.

21. 457 P.2d 650, 653 (Alaska 1969); *accord*, Condon v. State, Op.No. 802, 498 P.2d 276 (Alaska 1972); Thessen v. State, 454 P.2d 341, 352 (Alaska 1969), cert. denied, 396 U.S. 1029, 90 S.Ct. 588, 24 L.Ed.2d 525 (1970); Mead v. State, 445 P.2d 229, 233 (Alaska 1968); Anderson v. State, 438 P.2d 228, 230–231 (Alaska 1968). *See also* Johnson v. State, 486 P.2d 379, 380 (Alaska 1971); Dimmick v. State, 473 P.2d 616, 618 (Alaska 1970); Lewis v. State, 469 P.2d 689, 692 n. 3 (Alaska 1970).

fendant in having a genuine trial in a reasonable sense. . . . [22]

The same "mockery and farce" standard applies to counsel representing a defendant entering a guilty plea.[23]

We thus must determine if Tafoya was provided genuine proceedings in a reasonable sense and if those proceedings were of a judicial character. Indirectly, the dichotomy between direct and collateral consequences again enters into our consideration. Our focus in examining the proceedings below must be on those facets intrinsic to the proceedings themselves. Thus if counsel had failed to warn Tafoya of certain direct consequences of his plea, we would not only have concluded above that his plea was involuntary, but we would also conclude now that he had not been provided with a genuine proceeding and therefore that he had been denied the effective assistance of counsel. However, error on counsel's part with regard to collateral consequences cannot be said to have infected the proceedings to such an extent as to have prevented their being either genuine or of a judicial character. We therefore agree with the federal courts [24] that failure of counsel to inform of the possibility of deportation does not constitute denial of the right to the effective assistance of counsel.

Superficially, there may appear to be an anomaly in holding both that defense counsel has the burden of informing his client of collateral consequences and that failure to inform of such consequences does not constitute denial of the effective assistance of counsel. The appearance of anomaly results from the collateral character of the consequence of deportation. Not every error by counsel constitutes incompetent representation. While we may sympathize with Tafoya, we cannot accept either of his arguments discussed above.[25]

The decision of the superior court denying Tafoya's application for post-conviction relief is affirmed.

BOOCHEVER, J., not participating.

RABINOWITZ, Justice (dissenting).

In my view, the central issue in this appeal is whether Tafoya has made a sufficient showing of "manifest injustice" under Criminal Rule 32(d) to warrant the setting aside of the judgment of conviction which was entered against him and to permit him to withdraw his guilty plea.[1] Criminal Rule 32(d) provides:

A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence,

22. 473 P.2d 616, 618 (Alaska 1970) (footnote omitted).

23. United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

24. United States v. Sambro, 454 F.2d 918 (D.C.Cir. 1971); United States v. Briscoe, 139 U.S.App.D.C. 289, 432 F.2d 1351 (1970); United States v. Parrino, 212 F.2d 919 (2d Cir. 1954).

25. We do not discuss, for we consider unfounded, Tafoya's third argument, that he was deprived of due process by virtue of the superior court's refusal to determine whether or not he should be deported. 8 U.S.C. § 1251(b) *allows*, but does not *require*, the sentencing court to recommend either for or against deportation. Moreover, here the superior court considered the motion to add a recommendation to the judgment. In denying

that motion, the superior court judge stated that he thought that the possibility of deportation was an appropriate element of judgment and that the court would have been more comfortable with the light sentence imposed had the judge known deportation was a possibility.

1. Federal authority has established that, prior to imposition of sentence, withdrawal of a plea of guilty should be allowed if it was induced by fraud, mistake, imposition, misrepresentation, or misapprehension by the defendant of his legal rights. Kienlen v. United States, 379 F.2d 20 (10th Cir. 1967); Williams v. United States, 192 F.2d 39 (5th Cir. 1951).

In Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927), the Supreme Court said:

[O]n timely application, the court will vacate a plea of guilty shown to have

may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Resolution of this Criminal Rule 32(d) issue turns on whether the possibility of Tafoya's deportation was one of the consequences of his guilty plea of which he must have had knowledge in order to have pled "voluntarily" to the rape charge.

In my view, the court's reliance upon the majority opinion in United States v. Parrino, 212 F.2d 919 (2d Cir. 1954), is misplaced. In *Parrino*, the defendant had fully served a two-year sentence and was faced with deportation as a result of his conviction when he attempted to withdraw his guilty plea. Withdrawal was not allowed because

> [g]enerally . . . the defendant's surprise as to the severity of sentence imposed after a plea of guilty, standing alone, is not such manifest injustice as to require vacation of the judgment. . . . 212 F.2d at 921.

been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. (citation omitted.)

According to Professor Wright, the sounder view "supported both by the language of the rule and by the reasons for it, would be to allow withdrawal of the plea prior to sentencing unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." 2 C. Wright, Federal Practice and Procedure § 538, at 4474–75 (1969) (footnote omitted); *See* United States v. Stayton, 408 F.2d 559 (3rd Cir. 1969).

After sentence has been imposed, Crim. R. 32(d) provides that withdrawal of a plea of guilty or nolo contendere will be allowed only "to correct manifest injustice." The grounds for the presentence post sentence distinction drawn by the rule was explained in Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963):

This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of

I question that result, since Parrino's trial counsel, an immigration law "expert," had informed Parrino there was no danger of deportation. Better reasoned and more persuasive is Judge Frank's dissent in *Parrino*. Judge Frank begins by noting that "[d]eportation, while not literally constituting criminal punishment, may have far more dire effects" on a defendant than a sentence of imprisonment.[2] Pointing to the incorrect advice given to the defendant by his counsel, Judge Frank notes that but for that advice, the defendant would not have entered his plea of guilty. Judge Frank then argues that a mistake concerning deportation, even if caused entirely by erroneous advice of defense counsel, should be sufficient to warrant withdrawal of guilty pleas under Rule 32(d), Federal Rules of Criminal Procedure.[3]

Judge Frank's view in *Parrino* has been cited with approval by Professor Moore who states that "the vigorous dissent of Judge Frank more likely reflects the present attitude of the federal judiciary."[4] On

plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process. (emphasis in original) (footnotes omitted)

2. Judge Frank goes on to say:
   For the Supreme Court has said that "deportation is a drastic measure, at times the equivalent of banishment or exile" and "is a penalty." Mr. Justice Jackson has described it as "a life sentence of banishment". I cannot believe that no "manifest injustice" exists merely because of the sentence of banishment for life was not imposed directly by the judge.
   United States v. Parrino, 212 F.2d 919, 924 (2d Cir. 1954) (dissenting opinion) (footnotes omitted).

3. Alaska's Crim.R. 32(d) is identical to Fed.R.Crim.P. 32(d).

4. 8A J. Moore, Federal Practice ¶ 32.07 [3], at 32–106 (2d ed. 1972) (footnotes

the other hand, most federal decisions on the point have held that the possibility of deportation is not a *direct* consequence of a guilty plea, and therefore it is not necessary that the accused be informed of the likelihood of deportation prior to acceptance of his plea. *See, e. g.,* United States ex rel. Durante v. Holton, 228 F.2d 827 (7th Cir.), cert. denied, 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484 (1956); Joseph v. Esperdy, 267 F.Supp. 492 (S.D.N.Y.1966). The only explanation for these deportation decisions is found in the *Joseph* case where it is stated:

> [I]n this Court, where it is mandated that the full range of consequences be set out . . . it seems onerous and absurd to expect a judge to explain to each and every defendant who pleads guilty the full range of *collateral* consequences of his plea . . . . [5]

I do not find such reasoning persuasive. On the particular facts of this record, I would hold that Tafoya has made out a case of "manifest injustice" under Criminal Rule 32(d), which showing requires that his judgment of conviction be set aside and that he be permitted to withdraw his plea of guilty to the charge of rape.[6] Here Tafoya's own counsel, as well as counsel for his codefendant, although aware that Tafoya and his codefendant were aliens, did not at any time prior to the change of plea advise Tafoya that he was subject to deportation as a possible consequence of his pleading guilty to the rape count. Nothing in the record before us contradicts Tafoya's assertion that it was only after he was sentenced upon his plea of guilty that he first learned deportation proceedings against him were being contemplated because of his conviction of rape. In such circumstances, I think the stringent "manifest injustice" standard of Criminal Rule 32(d) was met. I am not persuaded that the *Parrino* line of federal authority, which holds that the possibility of deportation is only a collateral consequence for purposes of determining whether the plea is voluntary, should be followed.[7] In light of the

---

omitted). *See also* United States v. Briscoe, 139 U.S.App.D.C. 289, 432 F.2d 1351, 1353 (1970).

Legal commentary, to the limited extent it addresses itself to the consequences of deportation, favors the approach taken by Judge Frank in his *Parrino* dissent. A Note in the Yale Law Journal concluded:

> [A] defendant who is able to establish that his plea was entered because of mistake as to consequences should be allowed withdrawal . . . . [T]here still exists the possibility of a guilty plea being entered by an innocent person relying on the security of a known outcome. This possibility is present whether the mistake concerns 'collateral' or 'direct' consequences. Note, 64 Yale L.J. 590, 599 (1955) (footnotes omitted).

A Note in 55 Colum.L.Rev. 366, 378 (1955), concluded that its argument against allowing withdrawal "is less persuasive where serious consequences, like deportation or expatriation, are involved." A Note in the Wash. University Law Quarterly states in part that although it is clear that the collateral consequences of a conviction need not be understood by the defendant about to plead guilty "[w]hat constitutes a 'collateral' consequence remains obscure." The Note then states:

> For example, parole ineligibility is now characterized as a direct consequence, although one classified as a collateral consequence about which a defendant need not be informed. Other collateral consequences, deportation conspicuously have chimerical characteristics of 'directness' which may eventually lead to a similar shift in dissatisfaction. Note, 1970 Wash.U.L.Q. 289, 320.

5. Joseph v. Esperdy, 267 F.Supp. 492, 494 (S.D.N.Y.1966) (emphasis in original).

6. In my view, the accused's guilt or innocence is not relevant in regard to a motion to withdraw a guilty plea under Crim. R. 32(d). Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009, 1012 (1927); 2 C. Wright, Federal Practice and Procedure § 537, at 469–71 (1969). A.B.A. Minimum Standards on Pleas of Guilty § 2.1(a) (iii) (approved Draft, 1968).

7. I do not necessarily find that Tafoya's plea of guilty was involuntary in the Crim.R. 11 sense, for a Crim.R. 32(d) motion to withdraw a guilty plea need not assert that the trial court failed to comply

foregoing, I would reach the conclusion that under the circumstances of this record the "manifest injustice" criterion of Criminal Rule 32(d) has been satisfied. For here Tafoya would not have pled guilty to the charge of rape were it not for the fact that neither his counsel nor co-defendant's counsel advised him that he was deportable if he entered such plea.

My analysis of the case at bar necessarily involves an assessment of the record as well as application of Criminal Rule 32(d) to the pertinent portions of the record. In making this analysis, I have taken into consideration the roles played by plea bargaining and guilty pleas in the administration of criminal justice in the federal and various state systems, as well as in Alaska's system of criminal justice. A high percentage of all criminal cases are disposed of on guilty pleas.[8] Professor Moore notes:

> Were the proportion of pleas to trials reduced, the machinery of justice . . . would break down. These facts of judicial life are worth emphasizing on

occasions when the courts express irritation with alleged abuse of post-conviction remedies.[9]

Given the dependence of our system of criminal justice upon waivers by defendants of their constitutional rights, embodied in jury trial determinations of their innocence or guilt, our courts have the concomitant obligation to insure that a guilty plea is "made voluntarily after proper advice and with full understanding of the consequences."[10]

Criminal Rule 32(d) affords the accused the procedural vehicle for withdrawal from plea bargains which were entered into without the necessary information to make an intelligent decision.[11] Prior to imposition of sentence, "[t]he court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just."[12] After sentencing, the defendant must surmount the more stringent standard of "manifest injustice." The reasons for the higher standard after sentence appear to

---

with the provisions of Crim.R. 11. United States v. Sambro, 454 F.2d 918, 925–926 (D.C.Cir. 1971) (separate opinion of Chief Judge Bazelon); Pilkington v. United States, 315 F.2d 204, 209 (4th Cir. 1963). In *Pilkington*, the court stated:

> While there may be a considerable overlap, the concept of 'manifest injustice' under Rule 32(d) permits the judge a greater latitude than the requirements of constitutional 'due process.' The facts disclosed in a hearing might not be sufficient for the court to conclude that the guilty plea was involuntary and violative of due process, yet the court may be of the opinion that clear injustice was done. 315 F.2d at 209. (citations omitted)

*Compare* Professor Wright's statement that

> [t]here is one apparent exception to the 'manifest injustice' standard. This is that if the court has failed to scrutinize a guilty plea properly, as required by Rule 11, before accepting it, an application after sentencing to withdraw the plea must be judged by the same liberal standard that applies before sentence has been imposed.

2 C. Wright, Federal Practice and Procedure § 539, at 476 (1969) (footnote omitted). In support of the text, Professor Wright cites United States v. Cody, 438 F.2d 287 (8th Cir. 1971), and Bishop v. United States, 121 U.S.App.D.C. 243, 349 F.2d 220 (1965).

8. 8A J. Moore, Federal Practice ¶ 32.07 [3], at 32–97 (2d ed. 1972); President's Commission on Law Enforcement and The Administration of Justice, Task Force Report: The Courts, at 9 (1967); Note, Plea Bargaining: A Model Court Rule, 4 J. L. Reform 487 (1971).

9. 8A J. Moore, Federal Practice ¶ 32.07 [3], at 32–97 (2d ed. 1972) (footnotes omitted).

10. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927).

11. United States v. Sambro, 454 F.2d 918, 925 (D.C.Cir. 1971) (separate opinion of Chief Judge Bazelon).

12. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927).

be considerations of judicial economy and a reluctance to let the defendant have two chances to secure favorable disposition of his case.[13]   Neither consideration is particularly relevant to the case at bar.   The superior court time expended in securing Tafoya's guilty plea has not been wasted under my analysis since the sentence imposed has been fully served.   Moreover, it cannot be said that Tafoya, having heard his sentence, is attempting a second go around at sentencing.   Here Tafoya has not only heard his sentence but has served it fully.[14]

In regard to the question as to precisely what an accused should be advised of by the court in order for the court to determine whether the plea of guilty is made with an understanding of its consequences as required by Criminal Rule 11,[15] I think that this is a matter which should be referred to this court's Standing Advisory Committee on Criminal Rules for study and recommendation to this court.   In the interim, I would require that an alien be informed of the possibility of deportation before he will be considered to have pled voluntarily with an understanding of the consequences of a guilty plea.   For I do not think it too onerous a burden to determine prior to acceptance of a guilty plea whether an accused is an alien, and if

he is, to inform him that he may face deportation as a reult of his plea and conviction in a given case.

I also cannot agree with the court's holding that Tafoya was accorded effective assistance of counsel as guaranteed him by the United States [16] and Alaska Constitutions.[17]   Tafoya's showing remains uncontradicted that prior to pleading guilty both his own attorney and counsel for his codefendant knew that Tafoya and his codefendant were aliens.   But at no time preceding the entry of his guilty plea was Tafoya advised that because of his alien status he was subject to deportation upon conviction of a crime involving moral turpitude.   Both counsel for Tafoya and his codefendant admit they were unaware that Tafoya was deportable under 8 U.S.C. Section 1251(a) (4) if he pled guilty to the crime of rape.

In order to reach the conclusion that deportation of an alien is merely a collateral consequence of his guilty plea, one must necessarily view the right to live in the United States of America, as well as banishment therefrom, as matters of small moment.   I am not prepared to mute the drastic ramifications deportation can have for the individual involved.   In my view, effective assistance of counsel in the circumstances of this case required Tafoya's

---

13.  *See* discussion in note 1, *supra.*

14.  A procedural problem should be mentioned in my view.   In the superior court, Tafoya denominated his application seeking leave to withdraw his guilty plea as an application for post-conviction relief. My study of this application and the relief sought therein suggests that procedurally Tafoya should have moved pursuant to Crim.R. 32(d), which governs withdrawals of guilty pleas, rather than under Crim.R. 35(b), which generally governs post-conviction relief matters.

Since counsel for Tafoya could have reasonably read Nichols v. State, 425 P.2d 247 (Alaska 1967), and Thompson v. State, 412 P.2d 628 (Alaska 1966), as approving use of Crim.R. 35(b) as the proper procedural vehicle for seeking withdrawal of a guilty plea after sentence had been imposed, I think the matter should be

considered as properly before us in the procedural sense.   In future cases where a defendant desires to withdraw a plea of guilty or of nolo contendere after imposition of sentence, such relief should be sought by way of motion made, pursuant to Crim.R. 32(d).

15.  McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418, 425 (1969) (footnote omitted) :
[T]he more meticulously the Rule [Rule 11] is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

16.  Amends. VI, XIV.

17.  Art. I, § 11.

attorney to acquaint himself with the federal law governing convictions of aliens and to inform Tafoya of deportation possibilities arising from his plea. Absent any such minimal legal assistance, I cannot join in this court's conclusion that Tafoya received competent legal representation prior to and at the time he pled guilty.[20]

For the foregoing reasons I would reverse the superior court's order denying Tafoya post-conviction relief and remand the case with directions to set aside Tafoya's judgment of conviction and, pursuant to Criminal Rule 32(d), to permit Tafoya to withdraw his guilty plea to the charge of rape.

20. Nor can I find that through the conscientious and diligent efforts of his trial counsel Tafoya was given effective assistance of counsel in accordance with established notions of fair play and substantial justice. Condon v. State, Opinion No. 802, 498 P.2d 276 (Alaska 1972).